## No. 9873.

IN THE MATTER OF ORLOFF LAKE, PRAYING FOR A WRIT OF POS-
SESSION UNDER A TAX TITLE, AND THE THIRD OPPOSITION AND
INJUNCTION OF JOHN LESLIE.

Section 3 of Act 82 of 1884, which declares that a tax title executed before a notary shall be
conclusive evidence of the following facts:

1st.  That the property was assessed according to law:

2d.  That the taxes were levied according to law;

3d.  That the property was advertised according to law:

4th.  That the property was adjudicated and sold, as recited in said deed;

5th.  That all of the prerequisites of the law were complied with by all the officers, from
the assessment up to and including the execution, and registry of the deed to said pur-
chaser,—was only intended to conclude enquiry into the *non*-essential requisites to the
exercise of the taxing power.

The provisions of that section necessarily imply that all the jurisdictional prerequisites have
been complied with; and if, in point of fact, they have not, the tax title does not preclude
an action of nullity based on *non*-compliance therewith.

The Legislature had ample power to enact such a statute, and the act in question is not open
to the objection of unconstitutionality urged against it.

APPEAL from the Civil District Court for the Parish of Orleans.
*Tissot*, J.

*Joseph H. Spearing*, for Plaintiff and Appellant.

*Frank Hebert*, for Defendant and Appellee.

*M. J. Cunningham*, Attorney General, and *James C. Moise* as *Amici Curiæ*.

*Braughn, Buck, Dinkelspiel & Hart*, and *B. R. Forman*, on the side of Defendant and Appellant.

### ON REHEARING.

The opinion of the Court was delivered by

WATKINS, J.   On the 14th of September, 1885, Orloff Lake became the adjudicatee of the following-described property, viz: "Twenty-six (26) certain lots of ground in the Sixth District of the city of New Orleans, in the square bounded by Tchoupitoulas, Jersey, Valmont and Leontine streets, designated as lots numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10,

In the Matter of Orloff Lake.

11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26, and (which) "form and comprise square No. 127. Said square No. 127 measures * * 280 feet 10 inches and 6 lines front on Levee street, same on Jersey street, and 354 feet front on Valmont street, and same on Leontiné street."

The adjudication thereof was made by the State Tax Collector, under the terms and provisions of act No. 82 of 1884, to enforce the payment of certain unpaid State taxes, due on said property for the years 1869, 1873, 1874, 1875, 1876, 1877 and 1878, as that of Mrs. Helen P. Harrison, or her estate or heirs, as the present owners thereof.

In pursance of said adjudication the tax collector executed to the said purchaser an absolute and irredeemable title to the said property, with the right to immediate possession thereof, and with full warranty.

This title was duly registered in the conveyance office, and thereunder the adjudicatee applied to the court for a writ of possession.

To this writ of seizure and possession John Leslie made opposition on the following grounds, viz :

1.  That said property was acquired in 1853 by the late Mrs. Helen P. Harrison, and that she departed this life on the 4th of July, 1859, leaving as her sole surviving heir her minor child, Daniel C. Harrison, who became of full age in 1874.

2.  That said property was inherited by said heir as a part of her estate.

3  That in October, 1885, said Daniel C. Harrison was recognized by the court as the sole heir of his said deceased mother, and, as such placed in possession of all her property, including the property hereinbefore described."

4.  That he (opponent) " has lately acquired, *through said Daniel C. Harrison,* all the rights, title and interest of said D. C. Harrison and of said Mrs. B. S. Harrison (should be Mrs. H. P. Harrison) in and to said property," by notarial act, of date March 29, 1886.

6.  That in August, 1885, said property was advertised and sold to Orloff Lake, in the enforcement of certain delinquent taxes enumerated under the provisions of act 82 of 1884.

7.  That the advertisement of said property for sale, and said adjudication and sale, were illegal and void, on the following grounds, viz :

a.  "Because the property was not assessed for any of said years 1872 to 1878, in the name of said Mrs. H. P. Harrison, or in the name of the estate of Mrs. H. P. Harrison, or in the name of D. C. Harrison,

the owner thereof, during said years; but the same *was illegally assessed* in the name of John Boylan, who was never the legal owner of said property."

b. "Because said property was *insufficiently and illegally described on the assessment rolls* for said years 1872 to 1878 inclusive; that the description of said property on the assessment rolls for said years was not in accordance with law."

c. "Because, neither said D. C. Harrison nor any person interested in said property ever received any *notice of the assessment* of said property for any of said years, or any notice that any taxes were due on same for said years, or any notice that said property would be advertised or sold to enforce the payment of said taxes, nor did any one interested in said property receive any notice of said sale."

d. Because the State taxes on said property for the year 1873 had been paid previous to said advertisement and sale.

e. Because said advertisement was contrary to the provisions of act 82 of 1884, said property having been advertised as that of "Mrs. H. P. Harrison, or her estate and heirs (as) the present owners."

f. That, if Act 82 of 1884 authorized the tax collector to change the assessment of the property, or to advertise the same otherwise than as it was assessed, it was an unconstitutional law.

g. Because said property was never adjudicated to the State, and was not so advertised, and that same was simply advertised for sale to enforce the payment of delinquent taxes, and said advertisement and sale were contrary to the provisions of act 82 of 1884, as it only provided for the sale of property that had been previously adjudicated to the State.

8. That Act 82 of 1884 is unconstitutional, on the the following grounds, viz. :

*aa.* Because all the objects of the act are not expressed in the title.

*bb.* Because the act comprises, deals with and legislates on more than one object.

*cc.* Because it provides for the divestiture of title to property, "without due process of law."

*dd.* Because said act is retrospective in its provisions, and operates as a divestiture of vested rights.

*ee.* Because said act provides for notice by public citation only, in violation of Article 210 of the Constitution.

*ff.* Because said act does not provide for, nor allow, the right of redemption, in violation of said Article 210.

*gg*. Because said act confers upon tax collectors judicial powers in violation of Articles 14, 15, 80 and 210 of the Constitution.

*hh*. "Because it is beyond the power of the legislature to provide that an act (of sale) shall be *conclusive* evidence, as provided in said act."

The tax collector's act of sale is annexed to and made a part of the opponent's petition.

To this petition the adjudicatee and petitioner tendered a plea of no cause of action. This was overruled by the judge *a quo*, and on the trial of the merits, he rendered judgment in favor of the opponent, sustained his injunction and annuled the sale to Lake. From this judgment the adjudicatee and petitioner for a writ of possession, has appealed. The correctness of the ruling of the lower judge on the petitioner's exception is the principal question in the case, and we will first examine and dispose of it.

That exception was predicated on the provisions of Section 3 of Act 82 of 1884, which is couched in the following terms, viz.:

"That each tax collector  *  *  *  shall, as soon as said adjudications to bidders are made and complied with, execute to each purchaser a deed of sale in the name of the State, of each specific piece of property, before a duly qualified notary public, by authentic act  *  *  *  a duly certified copy of which deed shall be *prima facie* evidence of the following facts :

"1st. That the property conveyed was subject to taxation ;

"2d. That none of the taxes for which said property was offered was paid ;

"And said deed shall be *conclusive* evidence of the following facts :

"1st. That the property was assessed *according to law ;*

"2d. That the taxes were levied *according to law ;*

"3d. That the property was advertised according to law ;

"4th. That the property was adjudicated and sold as recited in said deed ;

"5th. That all of the prerequisites of the law were complied with, by all the officers, from the assessment up to and including the execution and registery of the deed to said purchaser, etc. *  *  *  If only a portion of the taxes for which the property is sold are proved to have been paid, the sale and title to the purchaser shall, nevertheless, be good and valid the same as if *all* the taxes for which it is sold, had not been paid."

We are to ascertain what is the true and correct import of the

language employed in this legislative enactment, in so far as same bears on this controvesy.

In our opinion we said "that precedents are not wanting to show that in several 'sister States their legislatures have been recognized as having the power of making such deeds *conclusive* as to *non*-essential prerequisites, but the exercise of legislative power has never been sanctioned, so as to make such deeds *conclusive* as to *essential prerequisites.* * * *

"It would serve no useful purpose to enter into an examination of the prerequisites which are deemed essential and *non*-essential, as for the purposes of this case it is amply sufficient to say that all the decisions and commentators agree that the *omission to assess at all* the property to which the deed is made, is a radical, or fatal defect, which strikes the proceedings with nullity."

On this hypothesis we expressed the opinion that the opponent had a right to attack the act of sale in question, and show that the property had never been assessed; and, upon an examination of the evidence adduced in support of opponent's assault upon it, we came to the conclusion that lots 5 and 8 had never been assessed at all.

A re-examination of the record has induced us to modify our opinion in some particulars, but without altering our conclusions with regard to the law.

Reference to the paragraphs we have quoted from the petition of opponent, will disclose that he does not allege that *no assessment* was made at all, but that he does allege that "the property was not assessed *in the name* of Mrs H. P. Harrison, etc.;" that same was *illegally assessed in the name* of John Boylan," and that it was "illegally and insufficiently described on the assessment rolls, etc."

The opponent does not allege that the property was not subject to taxation, or that *all* the taxes for which the property was sold had been paid. Of these ingredients the act of sale furnishes *prima facie* evidence, and not being assailed for the want of either, it is full proof of their existence.

This view necessitates an examination of the statute, the constitutionality of which is drawn in question, and a comparison of it with the several charges preferred against the tax title.

It is well settled by the decisions of this Court, as well as those of the courts of our sister States, that the *essential, jurisdictional* prerequisites for the exercise of the taxing power are, viz.:

1st.   The *listing* and *assessing* of the property.

2d.   The *levy* of the tax upon it.

3d.   The statutory warrant for its sale.

4th.   A sale made under this statutory warrant.

Do we understand that the statute under consideration makes a tax title conclusive as to either?   No.   What is meant by the phrases: "That the property was assessed *according to law?*"   "That the taxes were levied *according to law?*"   "That the property was advertised *according to law?*"   "That the property was adjudicated and sold *as recited in said deed?*"

Do they not necessarily imply that all those essentials had been fulfilled, and that the tax title is only made *conclusive evidence* that, if performed, they had been performed "according to law?"   Does it not follow, as a legal sequence, that, as opponent's complaint is that his property was not assessed *in the name* of the true owner, and was illegally assessed *in the name* of John Boylan, it is excluded by the deed, because *it* furnishes conclusive evidence of the correctness of the assessment, if made at all?   It would seem so.

In *Dorsey vs. Hill*, 4 Ann. 107, plaintiff enjoined an execution on the ground " that the advertisement was illegal, because it was made by a person not authorized to perform the act," and the Court held that the suit put at issue the *capacity* of the officer only.

*Bottom vs. Breed*, 4 La. 344, an exception was taken to the admissibility of a document in evidence, on the ground " that it did not appear that the sale was made by a *legal officer;*" and the Court held that these reasons ought not to have prevailed against the introduction of this piece of evidence, because the person who executed the process was an officer *de facto.*

As, in each of those cases, the *capacity* of the officer was put at issue, and not the *fact* of an advertisement or sale, so, in the instant case, the opponent has put at issue the legality of an assessment in the *name* of John Boylan, and not the *fact* of an assessment at all.

Opponent's complaint is not well founded, because it is made of *non*-essentials, which are cured by the execution of the tax title.

With regard to the alleged unconstitutionality of the law, we think opponent is in error.   A simple inspection of the title of the act will suffice to show that its object is set forth distinctly, and a perusal of the act will disclose that its *only* object was to inforce the ordinance for the relief of delinquent taxpayers.

We do not regard the provision of the statute, in any sense, retrospective; nor can we perceive in what way they can divest vested rights.   The legislature only intended to provide the manner in which

*valid* sales could be effected of property on which delinquent taxes are due the State prior to the year 1879, and whereby such taxes could be collected.

The ordinance referred to provides that "all interests, penalties, etc.,   *   *   on taxes and licenses due the State   *   *   prior to the first day of January, 1879, and yet unpaid, are remitted," etc.

*   *   *   *   *   *   *   *

" In the event the principal of said taxes and licenses is not paid by said time, the interest, penalties, etc.,   *   *   hereinbefore remitted, shall revive and attach to the property upon which the taxes and licenses are due, and *such property shall then be sold, in the manner to be provided by law, and the title of the purchaser shall be full and complete,*" etc.

In the effort to enforce this ordinance, the legislature passed Act No. 107 of 1880, and, subsequently, Act No. 98 of 1882; but great difficulty was experienced in giving good and sufficient titles to property sold under them, and the State was thereby deprived of this source of revenue to a great extent; hence, the passage of Act No. 82 of 1884 became a necessity. It deals exclusively with the *proceedings* necessary to effectuate sales of such property as are subject to such delinquent taxes, and the execution and effect of tax titles evidencing such sales. It is a remedial law, authorized by the terms of said ordinance. Certainly, the opponent has no vested right in the property that will be divested by the sale made under it, because his vendor, D. C. Harrison, was not placed in possession of his mother's estate *until after it was made;* and the taxes sought to be collected thereby were assessed against her succession and heirs, and he purchased *cum onere.*

That such proceedings as those provided by this act constitute "due process of law," in the sense of the Constitution, has been so often decided, that it may be classed as an elementary principle in matters of taxation.

The provisions of Article 210 of the Constitution of 1879 have *exclusive* reference to the taxes that may be assessed under laws passed in pursuance thereof; and those of the ordinance for the relief of delinquent taxpayers, to delinquent taxes that were assessed in years antecedent to its adoption by the people.

All tax sales made in pursuance of Article 210 are redeemable within one year; but those made in pursuance of said ordinance and law are not redeemable at all.

We do not think the act confers judicial powers on tax collectors.

Bank vs. Tureaud et als.

The objection made to the effect that the legislature was without power to pass a law declaring that a tax title shall be conclusive evidence, as provided in the act under discussion, has been virtually disposed of already, as we have ascertained that it has no reference to essential, jurisdictional prerequisites. We think the law is constitutional, and the exception of no cause of action should have been sustained.

It is, therefore, ordered, adjudged and decreed that our former decree be and the same is annulled and set aside, and that the judgment appealed from be annulled, avoided and reversed; and it is further ordered, adjudged and decreed that the demands of opponent be rejected at his cost in both courts.