NEW ORLEANS, M. & T. R. Co. *v.* NEGROTTO.

*(Circuit Court, E. D. Louisiana. November 16, 1889.)*

TAXATION—ERRONEOUS ASSESSMENT.
  Under Act La. 1882, No. 96, § 8, requiring each tax assessor to ascertain the taxable property in his district, both by examination of the records of conveyances and by inquiries, etc., an assessment in the name of former owners, whose title has been divested by bankruptcy sale, and who are not in possession, and an adjudication of the land to the state for non-payment of the taxes, are void.

In Equity. On motion for injunction.
*Bayne & Denegre*, for complainant.
*J. R. Beckwith*, for defendant.

PARDEE, J. On July 31, 1866, the city of New Orleans, by proper act, sold and conveyed to Messrs. Kennedy & McKeon, a commercial firm doing business and residing in the city of New Orleans, two certain *batture* lots in the square No. 17 A, bounded by Notre Dame, Julia, Delta, and Water streets. January 3, 1868, Charles McKeon individually, and as a member of the commercial firm of Kennedy &. McKeon, made a surrender in bankruptcy, and on the 4th day of January, 1868,

was duly adjudicated a bankrupt individually, and as a member of said firm. On his schedules, the said bankrupt surrendered the property aforesaid, and thereafter it was taken possession of by the assignee under the orders of the bankrupt court, and held as a part of the estate of said bankrupt. Thereafter, as a part of the said estate, it was ordered sold, and was sold at auction, and one W. S. Williams became the purchaser on the 17th day of March, 1871. The assignee in bankruptcy, by proper conveyance, conveyed the said property, in pursuance of said sale, to said W. S. Williams. Afterwards, on the 22d day of August, 1883, the said W. S. Williams, in an act reciting the aforesaid sale and purchase in bankruptcy, declared that said lots were purchased by him for the New Orleans, Mobile & Texas Railroad Company, and he therein assigned and conveyed said property, with all rights and claims, to the New Orleans, Mobile & Texas Railroad Company. Both of the two last-mentioned acts were duly registered in the conveyance office in the city of New Orleans on February 11, 1885. Immediately after the sale, as aforesaid, by the assignee in bankruptcy, to said Williams, complainant entered into the possession of said property, and built thereon section-houses, and ever since has been in the open, notorious, and public possession thereof. In the years 1882 and 1883 the said property was listed and assessed for taxes to the state of Louisiana in the name of Daniel Kennedy and Charles W. McKeon. The said taxes, so listed and assessed, not being paid, on November 24, 1884, the state tax collector of the first district of the city of New Orleans, by his deputy, claiming to act under authority of and in compliance with act No. 96 of 1882 of the Laws of Louisiana, offered the said property for sale for such delinquent taxes, and at such sale adjudicated the same to the state of Louisiana. Afterwards, on the 4th day of February, 1885, the said state tax collector executed a conveyance of said property to the state by two distinct acts of sale,—one on the adjudication for taxes due in 1882, and the other upon the adjudication for taxes due in 1883. On the 13th day of June, 1889, Mr. Harrison Parker, state tax collector of the first district of the city of New Orleans, claiming to act under act No. 80, (approved July 12, 1888,) of the Laws of the State of Louisiana for 1888, and claiming to have complied with all the requirements and formalities of said law, proceeded to offer for sale, and did sell, the aforesaid property to D. Negrotto, Jr.; and afterwards, on the 15th day of August, 1889, by public acts before a notary, in pursuance of said sale, did execute to said Negrotto deeds of sale of the property aforesaid, therein reciting a compliance with requirements of the said act of 1888 in all particulars. The complainant brings a bill to quiet his title as against the said Negrotto, and to cancel and annul the aforesaid conveyances as clouds upon his title. The defendant has filed an answer demurring to the jurisdiction of the court, exhibiting his deeds under the act of 1888, and claiming thereunder a perfect title.

The case has been submitted upon a motion for an injunction *pendente lite.* It seems clear that under the sale in bankruptcy, and the title in pursuance thereof, Williams became and was possessed of the legal

title to the property in question; and that by his subsequent conveyance to the complainant, and the complainant's open, notorious, and adverse possession for over 15 years, the complainant acquired and has a full and complete legal title by deed and prescription; at all events, complainant has sufficient and adequate legal title to maintain the suit to remove a cloud from his title. It also appears certain that, in 1882 and 1883, Daniel Kennedy and Charles McKeon were not the owners nor possessors of the said property, and that for those years the said property was assessed in the name of a person not the owner. It has long been well settled in Louisiana that an assessment of property not made in the name of the owner, when the law requires that property shall be assessed in the name of the owner, is a nullity, and, if assessed in any other name, the assessment is defective, and cannot be the basis for a legal tax-sale. In the case of *Maspereau* v. *New Orleans*, 38 La. Ann. 400, the supreme court of the state, in speaking of an assessment for the year 1882, where the plaintiff had purchased in July, 1881, and where the assessment of 1882 was in the name of her vendor, said: "It requires no argument to say that the assessment of 1882 was an absolute nullity, and that it could not be the basis for a lawful tax-sale;" citing *Lague* v. *Boagni*, 32 La. Ann. 912; *Guidry* v. *Broussard*, Id. 924; *Marin* v. *Sheriff*, 30 La. Ann. 293; and, to the same effect, cases may be cited from the tenth Annual to the fortieth. The law in force at the time the assessment in 1882 was made, (Act 96 of 1882, § 8,) provided that "each tax assessor, on or after the 1st day of January, shall diligently examine the records in the offices of mortgages and conveyances, and the abstract of land-entries, and shall otherwise make faithful inquiry and investigation, to ascertain what taxable property in his district or parish belongs to residents, and to absent owners, and to unknown owners," etc.; and section 7 of the same act provided "that if the lands to be assessed be a tract or a lot known by a name, or if the owner's name be known, it shall be designated by those particulars and by its boundaries." Under a law to the same purport, the supreme court of the state, in the case of *Marin* v. *Sheriff*, *supra*, said:

"Reference to the public archives is one of the means of ascertaining the title to and description of immovables subject to assessment; but it is not the only one. The law is imperative. The assessor must, by diligent inquiry, ascertain the names of all the inhabitants of their respective parishes, whether taxable for licenses or for property, or on both, and also all the taxable property within the same."

At the time of the assessment in question, the records of the bankruptcy court in New Orleans were teeming with transfers of titles to immovable property in the city of New Orleans, and such records were open to inquiry by tax assessors. If the tax assessor in the first district of New Orleans had examined those records, or had examined the property itself, he would have been at once informed by inspection who was the true owner of the property in controversy. The complainant's bill, supported by affidavits, shows many minor irregularities on the part of the officials of the state in advertising, selling, and conveying the prop-

erty under the requirements of acts of 1882 and 1888; but it is not necessary to consider them at this time. For the purposes of this motion, it is sufficient to find that the complainant's title is a legal one, and that the title relied upon by the defendant is a nullity, under the act of 1882, under which the property was assessed, advertised, and adjudicated to the state, because the property was not assessed in the name of the owner.

The effect of the act of 1888, and the defendant's deeds thereunder, remains to be considered. The said act of 1888 in terms provides for the advertisement and sale of all immovable property bid in for, and adjudicated to, the state for taxes for the year 1880 and subsequent years. It declares that all assessments on such property are legal and binding in every respect on parties interested in the property, and that the titles to the state, as acquired under adjudications for unpaid taxes, are good and perfect. Section 4 of said act is as follows:

"That each tax collector shall, as soon as said adjudications to bidders are made and complied with, execute to each purchaser a deed of sale, in authentic form, of each specific piece of property, a duly-certified copy of which deed shall be *prima facie* evidence of the following facts: (1) That the property conveyed in said deed was subject to taxation at the time of the assessments thereof; (2) that none of the taxes for which said property was adjudicated to the state were paid; (3) that the property was not redeemed at the time prescribed by law. And the said duly-certified copy of said deed shall be conclusive evidence of the following facts: (1) That the property was listed and assessed according to law; (2) that the taxes were levied according to law; (3) that the property described in said deed was adjudicated to the state according to law; (4) that the property was advertised according to law; (5) that the property was adjudicated and sold to the purchaser as stated in said deed; (6) that all the prerequisites of the law were complied with by all the officers from the listing and assessments of said property inclusive, up to, and including the execution and registry of the deed to the purchaser. And duly-certified copies of said deeds shall be full proof of all contained therein. The proof of payment of only a portion of the taxes for which the property was adjudicated to the state shall not in any manner affect the validity of the sale to the purchaser; and, in order to invalidate the sale to the purchaser, it shall be necessary for the party attacking it to prove that all the taxes for all the year for which the property was adjudicated to the state had been paid before the adjudication to the state, or that the property was redeemed, according to law, for all the year for which it was adjudicated to the state, or that the same was exempt from taxation for all the year for which it was adjudicated to the state."

The effect of this act has never been passed upon by the supreme court of the state; but one similar in many respects, and, as I think, different in material matters, has been recognized as valid, as to the effect of the deed of sale executed in accordance with its provisions. *In re Lake*, 40 La. Ann. 142, 3 South. Rep. 479; *In re Douglass*, 6 South. Rep. 675. The title to the act does not state one of its objects to be the validation of assessments, adjudications, or titles theretofore made. See Const. La. art. 29. The act seems to go beyond the constitution, for article 210 of the Louisiana constitution declares "that all deeds of sale made, or that may be made, by collectors of taxes shall be received by courts in evi-

dence as *prima facie* valid sales." The same article of the constitution' declares that, prior to the sale of property for taxes, the delinquent shall have notice which shall not be by publication, except in case of unknown owner, and that the property shall be advertised for sale in the manner provided for judicial sales. The act of 1888 presumes notice and advertisement, and, as a healing act, it dispenses with the constitutional requirements to a valid tax-sale. The act is retrospective with regard to assessments and adjudications prior to 1888. See article 8, Rev. Civil Code; article 155, Const. La. It purports, in terms, to cure defects that under the settled jurisprudence of the state are absolute nullities. It is a legislative declaration on the part of the state of title in itself. These objections are so serious that at present I am not prepared to give full effect to said act in this case, nor, in fact, any more effect to defendant's deeds of sale as evidence than the constitution of the state declares deeds of sale made by collectors of taxes shall have. The case may be prepared for final hearing, and then submitted to a full bench. In the mean time, the injunction *pendente* may issue on complainant's giving bond, with security, in the sum of $2,000.