[No. 7,209.—Department One.]
Aug. 24, 1882.

## A. G. MAPPA ET AL. *v.* THE COUNCIL OF THE CITY OF LOS ANGELES.

CONTRACT FOR STREET IMPROVEMENT—POWER OF COUNCIL OF LOS ANGELES CITY TO LEVY ASSESSMENT.—The plaintiffs, after failing to complete certain street work within the time limited in their contract with the city, and after a refusal of the Council to extend the time, proceeded with and completed the work.

*Held:* The work was not done in accordance with any contract with the Council; and payment for work so performed could not be enforced by assessment under the charter. Performance of the work for which payment is sought under a valid contract with the city is one of the prerequisites to the exercise of the power of assessment.

APPEAL from a judgment for the defendant in the Superior Court of the County of Los Angeles. ROLFE, J.

*A. J. King* and *Graves & Chapman,* for Appellants.

In the absence of any legislative restriction, we submit that

the power of this corporation to waive a strict compliance with the terms of the contract is undeniable. (Dillon on Mun. Corp., vol. 1, § 375; id., vol. 1, §§ 371, 373.) There being no restriction upon the power of the Council we submit they had the power to accept the work though completed after the time fixed in the contract.

*H. T. Hazard,* City Attorney, for Respondents.

After the expiration of the time in which they were to complete the work, the plaintiffs actually, on their own responsibility, proceeded with the work of grading the street. They certainly did it at their own risk. (*Turney* v. *Dougherty,* 53 Cal. 621; *Beveridge* v. *Livingstone,* 54 id. 54; *Mahoney* v. *Braverman,* id. 565.)

Ross, J.:

In this case it appears that the Council of the City of Los Angeles, having determined to grade and otherwise improve a portion of a certain street in that city called Olive street, entered into a written contract with petitioners in the month of September, 1876, by the terms of which contract petitioners agreed to perform and complete the work on or before the fifteenth day of November, 1876, for which the Council agreed to pay them at certain rates out of moneys to be collected by assessments to be levied upon the property liable to be assessed for the improvements, pursuant to the charter of the city. It seems that before entering into the contract, the petitioners talked with the Surveyor of the city in regard to the probable amount of work involved in the undertaking, and that they were informed by him that it would probably involve the removal of about thirty-three or thirty-four hundred cubic yards of earth, whereas, in fact, it involved the removal of about ten thousand cubic yards. But the circumstance that the Surveyor was so much mistaken in his estimate does not operate, in law, to relieve the petitioners of the consequences of their contract, whatever those consequences are. The statute did not devolve on the Surveyor the duty of informing the petitioners in respect to the matter. Before contracting to perform the work within a stated time, they ought to have informed themselves in that regard, even if

they could not have done so "without taking a good deal of pains."

The work was not completed within the time specified in the contract, and upon its expiration the Council instructed its Clerk to notify petitioners " that their contract for grading Olive street was void for their failure to perform said work." At the same time a petition was presented to the Council by the petitioners asking an extension of the time for the performance of the work, and this petition was denied. Notwithstanding this, petitioners proceeded with the work, and completed it on the third of February, 1877.

Subsequently, but at what date does not appear, the petitioners asked of the Council the acceptance of the work; but no other action was taken on the petition than the placing of it on file. Afterwards petitioners demanded of the Council payment for the work, and this demand was referred to the City Attorney. The next step in the proceedings, according to the record, was a report made to the Council, May 9, 1878, by the Board of Public Works to the effect that the work had been well done; that it was more than had been anticipated, and that the Board thought the Council erred in its refusal to extend the time for its completion; that although, in the opinion of the Board, the city was not legally liable, they thought it under the moral obligation to assist the petitioners to obtain pay for the work, and therefore recommended that the assessment be made in accordance with the provisions of the charter in force at the time the work was performed, if the petitioners would agree to hold the city harmless. A motion to carry out this recommendation was adopted by the Council, and subsequently the petitioners executed an agreement to hold the city harmless.

After this, an assessment list of the property fronting on the street where the work was done was prepared by the Surveyor with a view to the collection of the money to pay for the work, and this assessment was declared adopted and the clerk instructed to enter it upon the docket of city liens by a vote of six members of the Council—that body then consisting of twelve members, and the minutes not showing that there were any others present at that session than those

voting. This action in relation to the assessment was subsequently rescinded, and there the matter rests.

The present proceeding is an application on the part of petitioners for a writ of mandate to compel the Council to proceed and make an assessment on the property fronting on the street improved, for the purpose of collecting the money necessary to pay the petitioners for the work done by them.

By the charter of the city in force when the work in question was performed, the Council was authorized to order the work done and to contract for its performance; but the statute did not provide what the contract should contain. Its language was: "When the resolution of the Council ordering any work to be done has been adopted, the Council may thereafter proceed to advertise, for such time and in such manner as it shall see fit, for proposals to do said work, and for the awarding of such contract as it shall deem best, and not inconsistent with this Act. The Council shall have the right to reject any or all bids, and may readvertise for other proposals. It may let the work in such sections or parcels as it may deem best." (Statutes 1875–6, p. 710, § 6.)

By other provisions of the charter the Council was authorized to assess upon each lot fronting on the street improved its proportional share of the cost of the improvement, and to cause such assessment to be entered in the book of city liens, on which—in the event the amount assessed was not paid within five days from the entry in the docket—the Council was authorized to order a warrant to be issued by the Clerk. directed to the Tax Collector, requiring him to levy upon and sell the property to pay the assessment, with costs, etc.

It is perfectly plain from the charter that the Council must have made a contract for the performance of the work before the property fronting on the street improved could be assessed to pay for the improvement. Such a contract was made, but the petitioners did not live up to it. From a legal standpoint it does not aid them to say, as they do, that there was more work than they supposed, and that, therefore, they could not complete it within the time agreed on. It was their business to have informed themselves before contracting. When the contract time expired, and they had failed in their undertaking, they were notified by the Council that because of th

failure "the contract was void." Of course, in one sense this was not true, for, as said for petitioners, a contract does not become void because of a breach of it. But doubtless what the Council intended by the expression and what the petitioners understood by it was, that because of their failure to comply with its terms the Council considered it at an end. That petitioners could not have been misled, is shown by the further fact that at the same session of the Council they asked for an extension of time within which to complete the work, *and their petition was denied.* Whether, under the charter, the Council would have had the power to grant the extension, need not be determined, for it refused to do so. In the face of this refusal, and in the face of the notice from the Council to the effect that the contract was at an end, the petitioners continued the work and completed it during the following February. They did so without authority and at their own risk. They were not proceeding in accordance with any contract with the Council, and payment for work so performed could not be enforced by assessment on the property under the charter. Authority for such assessment must be found in the statute. It is a question of power, and the performance of the work, for which payment is sought, under a valid contract with the city, is one of the prerequisites to its exercise.

Judgment affirmed.

McKINSTRY and McKEE, JJ., concurred.