[L. A. No. 1217. In Bank.—March 2, 1905.]

## DELIA W. CHASE, Respondent, v. JOHN H. TROUT, Appellant.

STREET IMPROVEMENTS — CONSTRUCTION OF BOND ACT — EVIDENCE OF REGULARITY OF PROCEEDINGS.—Section 4 of the Street Bond Act of 1893, making the bonds issued thereunder for assessments for street improvements conclusive evidence of the regularity of the proceedings therein described, is not intended to cure defects and irregularities which may be cured by appeal to the council, but is designed to be conclusive evidence of all proceedings not jurisdictional in their nature, which the legislature might have dispensed with or made immaterial or directory, and is intended to cure all defects and irregularities which the legislature has power to cure by a subsequent validating act, though the statute may be mandatory in its terms, and would make omitted steps illegal and void, if it were not for the curative act. [Henshaw, J., McFarland, J., and Lorigan, J., dissenting.]

ID.—NATURE OF JURISDICTIONAL STEPS—LEGISLATIVE POWER.—Not every act required by law to be done in street proceedings is "jurisdictional" in the sense that the legislature cannot validate irregularities or omissions therein, though made a material and essential part of the statutory procedure, and sometimes for that reason described ambiguously as "jurisdictional." Where the court has acquired jurisdiction to order the work done, the entire subject of letting the work, executing the contract, and completing the work, and the minor details in the mode and manner of making the assessment are within the legislative discretion, and any irregularities or omissions therein are within the curative clause of the Street Bond Act, notwithstanding they might be material or fatal if offered in a proceeding in which they could be objected to. [Henshaw, J., McFarland, J., and Lorigan, J., dissenting.]

ID.—LIMITS OF CURATIVE POWER OF LEGISLATURE.—The power of the legislature to pass a curative act is the same with respect to local assessments as to general taxes, and is without any limits other than those imposed by the constitution. The legislature may devise any scheme for assessments for local improvements, provided it includes such notice and opportunity for hearing as to constitute due

process of law, and does not violate the constitution. It may also provide therein by a curative clause that a bond issued or deed executed thereunder shall be conclusive evidence of the regularity of all required steps other than those necessary to constitute due process of law, or to comply with any requirement of the constitution.

ID.—IRREGULARITY.—The term "irregularity" is not limited to those things which are performed, but defectively or imperfectly done. It includes omissions to do the act at all. The imperfect performance of an act, the doing of it at any improper time, and the failure to do it at any time, each i included in the term "irregularities."

ID.—DEFECTS AND OMISSIONS CURED—INVALID EXTENSION OF TIME— OTHER IRREGULARITIES.—Under the curative clause of the Street Bond Act the objections that the time for the completion of the work was extended after the time first fixed had expired, or that the notice of time for receiving bids was insufficiently posted or published, or that the contract did not provide that the materials used should comply with the specifications, or that the superintendent did not properly certify to the record of the assessment, or that the time for beginning work was not precisely fixed in the contract, or that the certificate of the engineer did not show that he measured the work, must, after the bonds are issued, be conclusively presumed to have no foundation in fact. [Henshaw, J., McFarland, J., and Lorigan, J., dissenting as to extension of time.]

ID.—DELEGATION OF POWERS TO SUPERINTENDENT.—The delegation to the superintendent of powers vested by law in the council as to the number and location of culverts, which might lawfully have been given to the superintendent in the first instance, though it might otherwise invalidate the assessments, is subject to the curative power of the Bond Act. [Henshaw, J., McFarland, J., and Lorigan, J., dissenting.]

ID.—ASSESSMENT LIEN PARAMOUNT TO PRIOR MORTGAGE.—The lien of a valid assessment for street improvements covers the entire estate, and is paramount to all private liens upon the property, including the lien of a prior mortgage thereon.

ID.—RIGHT OF MORTGAGEE TO APPEAL—CONSTRUCTION OF VROOMAN ACT. —A prior mortgagee affected by a street assessment has the right of appeal to the city council under section 11 of the Vrooman Act, which is to be liberally construed in favor of the person interested as respects the right of appeal.

ID.—RESOLUTION OF INTENTION—DESCRIPTION OF WORK—REFERENCE TO PLANS AND SPECIFICATIONS—MAXIM.—A resolution of intention describing the general character of the street improvements to be constructed "in accordance with the plans and profiles on file in the office of the city engineer, and specifications on file in the office of the city clerk," is not void because these plans and specifications were not incorporated into the resolution and published. They are not an integral part of the resolution, and the maxim applies that "That is certain which can be made certain."

ID.—DECLARATION AS TO BONDS—IMPLIED FINDING AS TO COST.—Where the resolution of intention declared that bonds were to be issued under the Street Bond Act, it is not required by the terms of the Bond Act that it should specifically declare that the cost of the proposed work will be greater than fifty cents per front foot, but the terms' of the resolution sufficiently indicate that the council had found the necessary fact to exist, and such finding is implied.

ID.—LIMITATION OF RIGHT OF ELECTION UNDER BOND ACT—REASONABLE TIME—NOTICE.—The period of thirty days allowed after the date of the warrant within which the statute permits the owner to prevent the issuance of any bond by filing an affidavit and requesting that no bond be issued, gives a reasonable time to the owner within which to make his election. Proper notices having been given, the owner is conclusively presumed to have knowledge of his right so to elect, and to preserve his rights to defeat the assessment for irregularity in the proceedings; and if he fails to do so he loses such rights under the conclusive-evidence clause of the Bond Act.

ID.—RECORDED CERTIFICATE OF ENGINEER—CONTENTS IMMATERIAL.—It is not material what were the contents of the recorded certificate of the engineer. The law does not require such certificate, nor prescribe its contents, but merely requires it to be recorded if the superintendent for any purpose has procured a certificate to aid him.

ID.—DESCRIPTION OF BONDS IN RESOLUTION.—The resolution need not copy the proposed bonds in full; but it is sufficient to specify that the bonds shall be issued to represent the cost of the improvement, and shall be serial, specifying terms, time of payment, and interest, which description is to be construed in connection with the positive requirements of the statute concerning the form and contents of the bonds.

ID.—AWARD OF CONTRACT—ADJOURNMENT OF COUNCIL—PREMATURE SESSIONS—PRESUMPTION.—Where the council adjourned its session until ten o'clock of the following day, but resumed business at nine o'clock on that day, the fact that the contract was awarded on that day does not render it invalid, where it does not appear that it was awarded before ten o'clock. An award before that hour will not be presumed.

ID.—CERTIFICATE TO RECORD OF ASSESSMENT.—Where it appears that the warrant, assessment, diagram, and engineer's certificate were copied in the proper book by the street superintendent, a certificate to the record, showing its date and signed by the superintendent, is sufficient to entitle the record to admission in evidence; and it cannot be inferred that all of the documents were not recorded at the time stated.

ID.—CHANGE OF GRADE OF STREET—SUFFICIENCY OF PETITION—EFFECT OF RESOLUTION OF INTENTION.—It is immaterial whether a previous petition for a change of grade of the street was or was not signed by the owners of a majority of the frontage. The resolution of intention is conclusive evidence that the owners of a majority of

the frontage had petitioned for its passage; and if there had been no legal change of grade the improvement contemplated would have reference to the legal grade, where there was nothing in the resolution specifying any particular grade or level; and no defect in the original petition to change the grade can impair the validity of the bonds provided for in the resolution.

ID.—CONTRACTOR'S RETURN UPON ASSESSMENT—IRREGULARITIES CURED.—The contractor's return upon the assessment need not state with whom the superintendent contracted. Where the warrant was in favor of two persons and the return was made by one of them, and shows that the demand was made by virtue of the warrant, it does not show an untrue statement; and any irregularities therein are cured by the conclusive-evidence clause of the Bond Act.

APPEAL — REVERSAL OF DEFAULT JUDGMENT — DISMISSAL OF APPEAL FROM ORDER REFUSING TO VACATE.—Where a judgment by default is reversed for insufficiency of the complaint to state a cause of action, an appeal from an order refusing to vacate the default and judgment will be dismissed as unnecessary to be passed upon.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing to vacate default and judgment. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

Frank G. Finlayson, and Edward R. Fox, for Appellant.

The conclusive-evidence clause of the Bond Act cures all omissions that the legislature might have dispensed with and all irregularities that it might have made immaterial. (*Ramish* v. *Hartwell*, 126 Cal. 443; *Ensign* v. *Barse*, 107 N. Y. 329; *Rollins* v. *Wright*, 93 Cal. 395; *Haaren* v. *High*, 97 Cal. 445; *Williams* v. *Board of Supervisors*, 122 U. S. 154; *Smith* v. *Cleveland*, 17 Wis. 573; *Ruggles* v. *County of Fond du Lac*, 63 Wis. 205; *Marx* v. *Hanthorn*, 30 Fed. 579; *Castillo* v. *McConnico*, 168 U. S. 680; *In re Orloff Lake*, 40 La. Ann. 142; *In re Douglas*, 41 La. Ann. 765; *Breaux* v. *Negretto*, 43 La. Ann. 426; *Castillo* v. *McConnico*, 47 La. Ann. 1473; Finlayson's Street Laws of California, p. 229.) Determination by the council that a sufficient petition was filed is final and conclusive. (*People* v. *City of Los Angeles*, 133 Cal. 338; *Spaulding* v. *Homestead etc. Assn.*, 87 Cal. 40; *In re Grove Street*, 61 Cal. 453; *Humboldt County* v. *Dinsmore*, 75 Cal. 604; *Farmers etc. Bank* v. *Board*, 97 Cal. 318.) The ordinance of intention must be deemed to be an ordinance to grade to the true grade wherever it might be. (*Emery*

CXLVI. Cal.—23

v. *San Francisco Gas Co.*, 28 Cal. 376-377.) And if the contractor did not grade to the correct grade, the only remedy was by appeal to the council. (*Warren* v. *Riddell*, 106 Cal. 352.) The proceedings to change the official grade are not open to attack in this proceeding. (*Wingate* v. *Astoria*, 39 Or. 603.) Since the property-owner is given a reasonable period (thirty days at least) within which to elect whether he will attack the assessment lien or not, the bond, when issued, may be made conclusive evidence of the due performance of all those jurisdictional prerequisites which are made such by legislative enactment only, and not by reason of any requirement of the constitution. (*Bronson* v. *St. Croix etc. Co.*, 44 Minn. 348; *Ruggles* v. *County of Fond du Lac*, 63 Wis. 205; *Ensign* v. *Barse*, 107 N. Y. 329; *People* v. *Turner*, 117 N. Y. 227;[1] *Turner* v. *New York*, 168 U. S. 90; 25 Am. & Eng. Ency. of Law, p. 698, note 2.) The superintendent's certificate of record was sufficient in form. (*Himmelman* v. *Danos*, 35 Cal. 441; *Greenwood* v. *Chandon*, 130 Cal. 469, 470; *Himmelman* v. *Hoadley*, 44 Cal. 225; *Moffit* v. *Jordan*, 127 Cal. 625; *Perine* v. *Lewis*, 128 Cal. 239.) The curative clause of the Bond Act cured any improper delegation of power to the superintendent, there being no constitutional objection to an original delegation of power in the respects objected to. (*People* v. *Bartlett*, 67 Cal. 156; *People* v. *Hurlburt*, 24 Mich. 69-70;[2] *Attorney-General* v. *Common Council*, 29 Mich. 108, 113; *Turner* v. *City of Detroit*, 104 Mich. 326.)

C. W. Chase, for Respondent.

The legislature has no power to make anything conclusive evidence of indispensable matters. (*McCready* v. *Sexton*, 29 Iowa, 356;[3] Cooley on Constitutional Limitations, pp. 452-453; *Strode* v. *Washer*, 17 Or. 50; *Marx* v. *Hanthorn*, 148 U. S. 183; *Abbott* v. *Lindenbower*, 42 Mo. 168; *Dingey* v. *Paxton*, 60 Miss. 1038; *Wantlan* v. *White*, 19 Ind. 472; *East Kingston* v. *Towle*, 48 N. H. 57;[4] Cooley on Taxation, pp. 521-522; *Allen* v. *Armstrong*, 16 Iowa, 513; *Maguiar* v. *Henry*, 84 Ky. 1;[5] *Ramish* v. *Hartwell*, 126 Cal. 443; *Lar-*

[1] 15 Am. St. Rep. 498.       [4] 97 Am. Dec. 575; 2 Am. Rep. 174.
[2] 9 Am. Rep. 103.            [5] 4 Am. St. Rep. 182, and notes.
[3] 4 Am. Rep. 225.

son v. *Dickey*, 39 Neb. 463;[1] *Powers* v. *Fuller*, 30 Iowa, 476; 6 Am. & Eng. Ency. of Law, 2d ed., 1050-1051; *Newell* v. *Wheeler*, 48 N. Y. 491; *Banner* v. *Burns*, 39 Fed. 895; *Little Rock and F. S. R. Co.* v. *Payne*, 33 Ark. 816;[2] *Lufkin* v. *Galveston*, 73 Tex. 341; *Silsbee* v. *Stockle*, 44 Mich. 562; *East Kingston* v. *Towle*, 48 N. H. 60;[3] *Davis* v. *Minge*, 56 Ala. 121.) The legislature cannot validate a void assessment for street improvements. (*People* v. *Lynch*, 51 Cal. 19-36;[4] *Brady* v. *King*, 53 Cal. 44; *Fanning* v. *Schammel*, 68 Cal. 428; *Kelly* v. *Luning*, 76 Cal. 309; *Schumacker* v. *Toberman*, 56 Cal. 511.) The conclusive-evidence clause of the Bond Act is void as allowing an unreasonably short period of limitation. (*Price* v. *Hopkins*, 13 Mich. 324; *Hayes* v. *Douglas County*, 92 Wis. 429;[5] *Groesbeck* v. *Seeley*, 13 Mich. 329; Cooley on Constitutional Limitations, 6th ed., pp. 449 (and note), 450; *Baker* v. *Kelley*, 11 Minn. 480; *Farrar* v. *Clark*, 85 Ind. 453; *Berry* v. *Ransdall*, 4 Met. (Ky.) 293.) The specifications unlawfully delegated powers to the street superintendent, which renders the assessment void. (*Bolton* v. *Gilleran*, 105 Cal. 247;[6] *Stansbury* v. *White*, 121 Cal. 433; *Grant* v. *Barber*, 135 Cal. 188; *Chase* v. *Scheerer*, 136 Cal. 248; *Chase* v. *City Treasurer of Los Angeles*, 122 Cal. 540; *Richardson* v. *Heydenfeldt*, 46 Cal. 68; *City of Stockton* v. *Creanor*, 45 Cal. 646; *Thompson* v. *Schermerhorn*, 6 N. Y. 95;[7] *Phelps* v. *Mayor etc.*, 112 N. Y. 221; *Foss* v. *Chicago*, 56 Ill. 356; *Andrews* v. *Chicago*, 57 Ill. 239.) The extension of time to complete the work after the time expired rendered the assessment void. (*Brock* v. *Luning*, 89 Cal. 319; *Palmer* v. *Burnham*, 120 Cal. 366; *Dougherty* v. *Coffin*, 69 Cal. 455; *Fanning* v. *Schammel*, 68 Cal. 429; *Mappa* v. *Los Angeles*, 61 Cal. 309; *Beveridge* v. *Livingstone*, 54 Cal. 54; *Turney* v. *Dougherty*, 53 Cal. 619.)

SHAW, J.—The defendant appeals from a judgment taken upon his default, and from an order refusing to vacate the default and judgment.

The complaint sets forth a cause of action to quiet title. The defendant's claim is alleged to consist of certain bonds

[1] 42 Am. St. Rep. 595.
[2] 34 Am. Rep. 55.
[3] 97 Am. Dec. 575; 2 Am. Rep. 174.
[4] 21 Am. Rep. 677.
[5] 53 Am. St. Rep. 926.
[6] 45 Am. St. Rep. 33.
[7] 55 Am. Dec. 385.

for an assessment for street-work, issued in pursuance of the laws commonly known as the Vrooman Act (Stats. 1885, p. 147), and amendments thereto and the Street Bond Act (Stats. 1893, p. 33). The proceedings leading up to the issuance of the bonds are set forth at length in the complaint, and it is claimed that there are numerous irregularities and defects therein which make the bonds absolutely void.

1. Section 4 of the Street Bond Act of 1893 declares that "Said bonds, by their issuance, shall be conclusive evidence of the regularity of all proceedings thereto under said Street Work Act, and this act, previous to the making of the certified list of all assessments unpaid to the amount of fifty dollars or over by the street superintendent to the city treasurer, and of the validity of said lien, up to the date of said list." Appellant contends that under this provision the plaintiff is precluded from making the objections, and that the defects and irregularities are thereby cured.

In *Ramish* v. *Hartwell*, 126 Cal. 443, we held that this clause of the Bond Act was constitutional in so far as it does not estop inquiry concerning those parts of the proceedings which are essential. It is there said that it may be regarded as settled that the legislature may make a tax-deed or street-bond "conclusive evidence of a compliance with all provisions of the statute which are merely directory of the mode in which the power of taxation may be exercised, but that it cannot make it conclusive evidence of those matters which are essential to the exercise of the power; that as to those steps which are jurisdictional in their nature, and without which the power of taxation cannot be called into exercise—such as the listing or assessment of the property, a levy of the tax, some notice of its delinquency, and that the property will be sold therefor—the legislature cannot deprive the owner of the right to show want of compliance." (See, also, *German Sav. and Loan Soc.* v. *Ramish*, 138 Cal. 120.) There has been some confusion as to the significance of the word "jurisdictional" in this and other decisions on the subject. The respondent appears to claim that every act required by law to be done by any person, officer, or body in the course of the proceeding is "jurisdictional," in the sense here intended, so that its omission or defective performance ousts jurisdiction and renders all subsequent acts void, and that none of these irregu-

larities are affected by the curative clause. It can be easily shown that this would make the curative clause without substantial effect. By section 11 of the Vrooman Act any person affected by the improvement, or by the assessment, is given the right to appeal to the council and thereby obtain a hearing and determination as to any defect in the performance of the work or irregularity in the assessment whereby he may be injured or prejudiced. By a long line of decisions it has become the settled doctrine that, with respect to any material defect or irregularity which could be cured by the council, the remedy by appeal is the only remedy; so that if· the party does not appeal he waives the objection, and if he does appeal the judgment of the council is conclusive. As to this entire class of defects and irregularities, therefore, the curative clause could not have been intended to have any effect, for, as above shown, they must all have been disposed of, either by a failure to appeal, or by action of the council upon such appeal, before the issuance of the bonds—the event which brings into action the curative clause. As to all other irregularities up to the issuing of the warrant—those which are material, and which cannot be remedied by the council—another series of decisions has established the principle that they are fatal, and render the entire proceeding void. In treating of this class of irregularities the requirements of the law found to have been disregarded have been frequently referred to as "jurisdictional" in character, and this without regard to whether they were or were not a part of the proceeding constituting, or necessary to constitute, a compliance with the mandates of the state or federal constitution, the intention evidently being merely to express the idea that the statute made the requirement a material and essential part of the statutory plan of procedure. Respondent now claims that this class of irregularities is not affected by the curative clause. These two classes comprise all the material irregularities that can possibly occur, except the few that might occur after the recording of the assessment and before the making of the certified list of assessments unpaid,—that is, irregularities or omissions in the demand and collection of the amount due upon the land assessed. Immaterial omissions or defects would not invalidate the proceeding nor call for any curative provision. With the trifling exception above

mentioned, there would be no class of irregularities upon which the conclusive-evidence clause could have the slightest effect. It is not to be supposed that the provision was intended to be so futile. It is clear that the clause was intended to have a much wider scope and to cover any irregularity in the entire proceeding. The true intent is put beyond doubt in *Ramish* v. *Hartwell,* and by the authorities cited in that case in support of the proposition above quoted, and by other authorities on the subject. In *Ensign* v. *Barse,* 107 N. Y. 338, the court says, speaking of a subsequent validating act: "If the thing wanting or omitted which constitutes the defect is something the necessity for which the legislature might have dispensed with by prior statutes, or if something has been done, or done in a particular way, which the legislature might have made immaterial, the omission or irregular act may be cured by a subsequent statute." And on petition for rehearing the court, on this precise question of the meaning of the word "jurisdictional," said: "A defect may be in one sense jurisdictional relatively to the authority of the assessors acting under an existing law, and yet not so as it respects the power of the legislature to pass a statute curing the defect." (P. 346.) The proposition is thus stated by other authorities: "Where directions upon the subject might originally have been dispensed with, or executed at another time, irregularities arising from neglect to follow them may be remedied by the legislature." (*Williams* v. *Supervisors,* 122 U. S. 163-164.) "It is competent for them [the legislature] to sanction, retroactively, such proceedings in the assessment of the tax as they could have legitimately sanctioned in advance." (Exchange Bank Cases, 21 Fed. 100.) "The legislature may make the tax-deed conclusive evidence of compliance with every requirement which the legislature might originally, in the exercise of its discretion, have dispensed with." (*In re Douglas,* 41 La. Ann. 765; *Breaux* v. *Negretto,* 43 La. Ann. 434.) "Inasmuch as it is entirely competent for the legislature to prescribe such formulas as it pleases with regard to the levy and collection of taxes, it is fully within its power, by retroactive legislation, to dispense with their necessity and obviate the evils of their non-observance." (*Vaughan* v. *Swayzie,* 56 Miss. 709.) "The healing act must in all cases be confined to validating acts which the legislature might

previously have authorized or omitted." (*Jones* v. *Landis,*
50 N. J. L. 376.) The power to pass such curative statutes
is the same with respect to local assessments as to general
taxes, and is "without any limit except such as is imposed
by constitutional restrictions or limitations." (*In re Commrs.
of Elizabeth,* 49 N. J. L. 497; *Blount* v. *Janesville,* 31
Wis. 658.) A curative statute or clause may preclude all
investigation except "the single inquiry whether, in the case
presented, the effect of applying the statute is to deprive the
party of his property without due process of law." (Judson
on Taxation, sec. 337.) The following authorities are sub-
stantially to the same effect: *Rollins* v. *Wright,* 93 Cal. 395;
*Haaren* v. *High,* 97 Cal. 445; *Larsen* v. *Dickey,* 39 Neb. 463;[1]
*Marx* v. *Hanthorn,* 30 Fed. 579; *In re Lake,* 40 La. Ann. 142;
*Raley* v. *Guinn,* 76 Mo. 263; *Joslin* v. *Rockwell,* 59 Hun, 129;
128 N. Y. 334; *People* v. *Turner,* 145 N. Y. 451; *Castillo* v.
*McConnico,* 168 U. S. 674; *Tifft* v. *Buffalo,* 82 N. Y. 210;
*Hatzung* v. *Syracuse,* 92 Hun, 204; 2 Cooley on Taxation,
3d ed., p. 1014; Burroughs on Taxation, p. 336; 2 Desty on
Taxation, 618, 619. The two cases last mentioned and many
others which might be cited are cases of local assessments.
The correct proposition is, that as the legislature has power
to devise any scheme for the assessment and levy of taxes
for local improvements, provided such scheme includes such
notice and opportunity for hearing to the owner of property
taxed as will be sufficient to constitute the due process of law
required by the constitution, and otherwise complies with
constitutional limitations and restrictions, so the legislature,
by a curative clause in the law establishing the scheme, may
provide that the issuance of a bond, or the execution of a deed,
in the enforcement of such levy or assessment, shall be con-
clusive evidence of the regularity of the performance of all
the required steps in the proceeding, excepting those that are
necessary to constitute the due process of law, or to comply
with any other constitutional prerequisite. As to all these
other statutory steps or acts, the same power which prescribes
them is competent to declare that their non-observance shall
not be fatal to the validity of the tax and that no inquiry
may be made concerning them. This is substantially the
effect of the statute in question here. The conclusive-evidence

[1] 42 Am. St. Rep. 595.

clause of section 4 of the Bond Act is a part of the law under which the proceeding was carried on, and its effect is the same as if it declared that, although all of these intermediate steps are directed, yet, if they are not performed as required, and the owner permits the matter to proceed until the bond is issued, he shall be thenceforth precluded from proof of such non-observance, and the requirements shall be conclusively presumed to have been complied with, excepting those which are necessary to comply with constitutional mandates.

It is intimated, rather than claimed, by the respondent that the phrase "regularity of all proceedings," included in the clause of section 4 in question, does not include such defects as the failure to perform a required act, but only refers to the defective or imperfect performance of such acts as appear to have been at least attempted. Some support for this contention is found in the opinion in *Ramish* v. *Hartwell*, 126 Cal. 443, where it is said: "This clause does not necessarily imply that any proceedings were in fact taken, but is limited to the 'regularity' of such as were taken." This, however, was said with reference to those parts of the prescribed proceeding as should be deemed essential to a compliance with the constitutional restrictions upon the power of the legislature. Any other signification would make the opinion contrary to all authority. An "irregularity" is a "violation or non-observance of established rules and practices." (Black's Law Dictionary, 644.) It "consists either in omitting to do something that is necessary for the due and orderly conduct of a suit, or in doing it at an unseasonable time, or in an improper manner." (*Ex parte Gibson*, 31 Cal. 625;[1] 17 Am. & Eng. Ency. of Law, 481; *Jackson* v. *Kittle*, 34 W. Va. 212.) The decisions cited by respondent on the proposition that an act which is void *in toto* cannot be validated by statute are inapplicable except to such acts as are void because in violation of the constitution. All other parts of the proceedings are subject to the rule that the power which creates can also destroy.

What, then, are the essentials the non-observance of which cannot be cured? The property must be within the jurisdiction of the local board; there must be the actual performance of some work which is to be paid for, that is, a "subject-

[1] 91 Am. Dec. 546.

matter'' of which the council can acquire jurisdiction; an
assessment or apportionment of the amount to be raised must
be made; and, as above stated, there must be sufficient notice
and opportunity for the hearing and determination of griev-
ances and objections to constitute due process of law.  In some
cases relating to ordinary annual taxes it is said there must
be some notice of sale, and this is among the essentials men-
tioned in *Ramish* v. *Hartwell.*  But these decisions do not
apply to local assessments under our statute, where notice of
sale is provided for by the requirement that a sale can be
made only in execution of a judgment of foreclosure, in which
the law for ordinary execution sales applies.

In this case the location of the street within the jurisdiction
of the council, the actual performance of the work as ordered,
and the making of a *de facto* assessment are all admitted.  By
the Vrooman Act the city council is given jurisdiction to order
made any of the improvements therein mentioned by the
proceeding therein prescribed.  The proceeding is begun
by a resolution of intention to do the work passed by the
council, which must be posted and published.  A notice of
the work and resolution is then to be posted and published
by the street superintendent.  At any time after the first
publication of the resolution, and before the assessment is
issued, any property-owner may appear before the council
and remonstrate or object to the proceeding in any particular
and obtain a hearing and decision thereon.  At the expiration
of twenty-five days after the resolution has been fully pub-
lished and twenty days after the notice is given by the street
superintendent, the statute declares that the council is deemed
to have acquired jurisdiction to order the work done.  This
part of the proceeding constitutes ''due process of law'' and
satisfies the constitutional requirement.  (*Brown* v. *Drain,*
112 Fed. 585; 187 U. S. 635; *Lent* v. *Tillson,* 72 Cal. 404.)
These seem to comprise all the essentials required by either the
state or federal constitution.

The act then makes provision with much detail for advertis-
ing for and receiving bids for the work, letting the contract
for the work to the lowest bidder, the execution of a contract
in pursuance thereof for the performance of the work, and the
supervision of its performance by city overseers.  After the
work is completed to the satisfaction of the city authorities

an assessment upon the property benefited is to be made in accordance with the minute directions of the statute, and when properly certified and recorded the several amounts assessed become liens on the several lots. All persons are deemed to have notice of the assessment from the time it is recorded.

It is obvious that the manner of procedure after the council has acquired jurisdiction to order the work done—the entire subject of letting the work, executing the contract, completing the work, and the minor details as to the mode and manner of making the assessment—are matters within the legislative discretion. If a plan entirely different in detail from that contained in the statute, but arriving at the same result, had been adopted by the legislature for the accomplishment of these objects, and had been enacted as law instead of the one embodied in the statute, such law, from a constitutional point of view, would have been a valid enactment. There is nothing in the constitution which made the plan adopted a necessary one in these particulars. The legislature could at any time amend the law by omitting all the details after jurisdiction is acquired, and giving the council general power to get the work done by such means and in such manner as it deems best, and the law would still be constitutional. It must be equally competent to provide, in the law itself, that a disregard of its provisions as to any of these intermediate proceedings shall not be fatal to the validity of the assessment, or that after a given stage in the matter has been reached, all inquiry as to such proceedings shall be cut off, and they shall be conclusively presumed to have been performed in the manner required by the law.

2. Many of the plaintiff's objections to the proceedings are within the scope of this proposition. Among these objections are the following: That the time for the completion of the work was extended after the time first fixed had expired; that the notice of the time of receiving bids for the contract was not posted or published for the precise number of hours or days which plaintiff claims the law directs; that the contract did not contain a provision that the materials "used" should comply with the specifications; that the street superintendent recorded the assessment but did not properly certify to such record; that the time for beginning work under the

contract was not precisely fixed by the contract; and that the certificate of the engineer does not show that he measured the work.

Without determining whether or not these objections would be fatal or material if offered in a proceeding in which they could be made, it is sufficient to say that, under the curative clause of the Bond Act, after the bonds are issued the objections are conclusively presumed to have no .foundation in fact.

The legislature undoubtedly could have enacted a valid law, which would have authorized the extension of the contract after the time first fixed had expired, or the receiving of bids after a more limited notice, or providing that a contract need not expressly provide that the materials used shall comply with the specifications, or that the record of the assessment need not be certified, or that .the time to begin work need not be fixed in the contract, or that no certificate need be made by the engineer. Having such power, it likewise has power to declare that after the issuance of the bonds it shall be conclusively presumed that such directions, if any such exist, have been followed.

The same may be said of the objection that the specifications delegated to the street superintendent powers which the law vests in the council. Such powers might lawfully have been given to the street superintendent in the first instance, and hence they are subject to the curative effect of the clause in question. There might, of course, be an attempt to give him such power as to enable him to make a complete departure from the statutory plan of procedure, and substitute for the work ordered by the council a different character of work. This would be equivalent to an attempt to compel the making of the improvement without notice of the character of the work to be done,—that is, without due process of law,—and it would necessarily be void notwithstanding a curative clause. So also the alternative plan giving him power to change the amount of the contract price and of the assessment, as was attempted and condemned in *Bolton* v. *Gilleran,* 105 Cal. 244,[1] may be beyond the reach of a curative provision, because it would give power to that officer to improve the street and levy an assesment without a substantial compliance with con-

[1] 45 Am. St. Rep. 33.

stitutional conditions. But we have here no attempt to make any such radical departure. The contract price was fixed by the council and could not be changed. The only discretion given to the superintendent of streets was with respect to the manner of performance of certain subordinate parts of the contract; details in the application of the general plan of the work to the actual physical conditions disclosed by the doing of the work, which could not be absolutely determined beforehand. The details here left to that officer consist of such things as the substitution of good earth for spongy material found in place beneath the proposed deposit of gravel, the quality of earth to be used for fills, and the allowance for settling and the corresponding change in the form of what is called the "cross-section," the culverts to be put in where drainage is necessary, the slope of the banks of fills, and the exact shade of the "dark slate color" to be given to the surface of the sidewalk. However desirable it would be to have the precise details of the work, even to the smallest fraction, fixed in advance of the bids, so that the exact cost to the contractor, as well as the contract price, may be known at the time the contract is let, it always has been, and always will be, impossible to do so. As was said in *Haughawout* v. *Hubbard*, 131 Cal. 678, "To some extent such details must depend on unanticipated contingencies, and can be determined only by the exigencies of the actual construction. The specifications must, therefore, always fail, more or less, in certainty or completeness of detail, and hence the most accurate and detailed specifications must leave unprovided for many questions arising in the course of the work, as to the kind and amount of the work or materials and other details of construction." The giving of discretion to some person as to all these details, the culverts possibly excepted, is inevitable in every such work. If not vested in and exercised by the street superintendent, it will be exercised by the contractor himself. The statute recognizes this condition, and itself provides that the work must be done to the satisfaction of the street superintendent. The culverts may not be subject to this necessity, and, in the absence of a curative clause, might be sufficient to invalidate the assessment. (*Grant* v. *Barber*, 135 Cal. 188.) But unquestionably the legislature might have provided in the statute that the number and location of the

culverts to be placed under any graded streets should be controlled by the street superintendent, and that the contractor for any such work should construct them where directed by such officer. Hence the curative provision validates the assessment in this respect. Much more is this true of the other details. All of them relate to the manner of the work and the method of procedure to get it done, and not to the subjects of the notice to the owners, the hearing of grievances, the fact that work was done, nor to the existence of a uniform assessment.

With respect to the objection as to the failure of the contract to declare that the materials ''used'' shall comply with specifications, it may be observed that the contract does require the contractor to ''furnish'' the materials required thereby and according thereto. Counsel's argument is, that materials can be ''furnished'' without being ''used.'' The answer is, that no materials can be *used* without being *furnished,* and if the materials furnished are sufficient, the materials used must be sufficient also.

Some other questions require more particular notice.

3. The fact that the plaintiff at the time the proceedings were in progress was a mortgagee only, and became an owner subsequently upon a foreclosure of her mortgage, even if it is conceded that such fact is averred, is entirely immaterial. As mortgagee she was as much bound by the proceedings as if she had been the owner, and her lien as mortgagee, although it may have been prior in point of time to that of the assessment, was not, because of that priority, paramount thereto. The assessment lien covered the entire estate and was paramount to all existing liens of a private nature. (*German Sav. and L. Soc.* v. *Ramish,* 138 Cal. 125; *California etc. Co.* v. *Weiss,* 118 Cal. 492.)

4. The fact that the conclusive evidence clause of the Bond Act arbitrarily fixes a period of thirty days, after which defects which before may have been fatal are placed beyond inquiry, does not make the law unreasonable. There is no strict analogy between such a law and a new statute of limitations shortening the time previously allowed for the bringing of an action. In such cases it has been held that the new law is void if it prescribes a period so short that it does not give the party a reasonable time after it takes effect within

which to begin his action. Here the notice of the proceedings is sufficient to constitute due process of law. The period of thirty days after the date of the warrant, within which the statute permits an owner to prevent the issuance of any bond by filing an affidavit and requesting that no bond be issued, gives a reasonable time to the owner within which to make his election whether he will take advantage of the extension of time afforded by the issuance of a bond, or, by requesting that no bond be issued, preserve such rights as he may think he has to defeat the assessment for irregularity in the proceedings. The notices having been given, he is conclusively presumed to have knowledge of his right to so elect. It should not be forgotten that, at the time the assessment becomes due, other persons have valuable property rights at stake as well as the owner.

5. It was not necessary that the resolution of intention should have given a more complete description of the work. The act provides that the council shall pass a resolution of intention "describing the work." The resolution in question declares it to be the intention of the council that the described street "be graded, graveled and guttered in accordance with the plans and profiles on file in the office of the city engineer and specifications on file in the office of the city clerk of the city of Los Angeles. . . . That a cement curb be constructed along each line of the roadway of said" street in accordance with said specifications, and "that a cement sidewalk five feet in width be constructed along each side of said" street, in accordance with the said specifications.

It is claimed that the resolution does not sufficiently describe the work, and also that the plans and specifications on file are made a part of the resolution by the reference to them, and that the proceedings are void because these plans and specifications were not incorporated into the resolution and published. The appellant in answer to this claim contends that the curative clause of the Bond Act covers these defects, if such they are. The resolution of intention is the first step in the proceeding. It is to be published, and it is by means of such publication, and the notice thereafter given, which refers to it for particulars, that the council acquires jurisdiction. It is a part of the "due process of law" required by the constitution, the want of which cannot be cured or waived by the

legislature. There must be a substantial compliance with the provisions of the act in regard to this preliminary process.

In several decisions of this court, involving resolutions which did not refer to any sufficient plans or specifications, it has been held that the phrase "describing the work" in the act, means that the resolution must not only describe the work proposed to be done, but must also state, in general terms at least, the materials of which such work is to be composed. Thus, it is said that a resolution declaring the intention that a certain street be "curbed" or "guttered," or that "suitable drains and inlets" be made, or that a "flushing apparatus" be provided, does not sufficiently describe the work, and that an assessment founded upon such a resolution is void. (*Schweisau* v. *Mahon,* 128 Cal. 114; *Fay* v. *Reed,* 128 Cal. 358; *Bay Rock Co.* v. *Bell,* 133 Cal. 152; *Williamson* v. *Joyce,* 137 Cal. 107.) In *Bay Rock Co.* v. *Bell* and *Fay* v. *Reed* there was a reference to plans and specifications, but it was found that the reference was incomplete, or that such plans or specifications were themselves defective and insufficient to remove the uncertainty as to the materials. The question whether or not an ordinance can be aided by a reference to documents on file was mentioned, but in each case it was expressly left undecided. There is no decision in this state on the exact point. It has been held that such an ordinance can be aided, as to the description of the street to be improved, by a reference to records or to facts manifest to the eye on the street itself. (*Williams* v. *Bergin,* 116 Cal. 57; *Cohen* v. *Alameda,* 124 Cal. 507.) It was not claimed that the things thus referred to must also be published. There are other cases of similar import. The authorities of other states, with practical unanimity, establish the rule that a reference to plans and specifications on file will serve to make sufficient the description of the work in a resolution of this character, where, by the terms of the description in the resolution itself, it would be void. The following authorities are substantially to this effect: *Stone* v. *Cambridge,* 6 Cush. 270; *Boehme* v. *Monroe,* 106 Mich. 404; *Jenney* v. *Des Moines,* 103 Iowa, 350; *Carlinville* v. *McClure,* 156 Ill. 496; *Chicago etc. R. R. Co.* v. *Chicago,* 172 Ill. 69; *Lehmers* v. *Chicago,* 178 Ill. 530; *Clafflin* v. *Chicago,* 178 Ill. 594; *Shannon* v. *Hinsdale,* 180 Ill. 202; *Brewster* v. *Peru,* 180 Ill. 124; 2 Beach on Public Cor-

porations, sec. 1182; McQuillin on Municipal Ordinances, sec. 545.

This does not make the plans and specifications referred to an integral part of the resolution so that they must also be published in order to comply with the statute requiring the publication of the resolution. The rule is but an application of the maxim, "That is certain which can be made certain." (Civ. Code, sec. 3538.) It applies not only to ordinances, but to all documents alike. It is the same rule which allows references to a map, plat, or to other documents in a description of land. Where such descriptions are required to be published,—as in a notice of sale of land, for instance,—it is never necessary to incorporate in the publication the map or plat referred to in order to make a legal publication. The purpose to be served by the publication of the resolution is, in the first place, to inform interested persons of the general character of the improvement proposed, and, in the second place, to make a specific declaration of the particular kind of improvement, as a basis of future action. The plans and specifications being on file in a public office both purposes will be as well accomplished by a mere reference to them as by setting them forth in full as a part of the resolution. The plans and specifications referred to supply all the information required to make the character of the work and materials absolutely certain. We hold that a resolution of intention sufficiently describes the work if it states the kind of work to be done, as stated in the statute, and refers to plans and specifications on file in the office of the city clerk or engineer, which give the details as to the materials to be used, and that the matters referred to need not be published.

6. The Bond Act provides (sec. 2) that "Whenever the city council . . . shall find, upon estimates of the engineer, that the cost of any proposed work . . . will be greater than fifty cents per front foot" it may determine that bonds shall be issued under the act, and (sec. 3) that when said city council shall determine that bonds shall be issued "it shall so declare in the resolution of intention to do said work." (Stats. 1893, p. 33.) These provisions do not make it necessary that the council should by a formal statement declare such finding. The council must, of course, ascertain and find that the cost will exceed the amount named, but this does not mean that

there must be an express written declaration of such finding similar to that required in an action in the superior court, or at all. The resolution, after the recital as to the cost, declares that "it is hereby determined that bonds shall be issued" as provided in the act. The passage of the resolution containing this declaration sufficiently indicated that the council had found the necessary fact. Where a legislative body is given power to act whenever it shall find a given fact to exist, it is not necessary, as a condition to the exercise of the power, that such body should previously or contemporaneously make a declaration that the fact exists. The fact that it takes the action raises the presumption that it had upon inquiry ascertained the existence of the fact, unless the statute giving the power explicitly requires an express finding or declaration of the conditions precedent. The Bond Act does not require any declaration whatever as to the cost. All that is required to be stated in the resolution is the determination of the council that bonds shall be issued. This the resolution does, and this implies a finding that the cost exceeded the amount required. (McQuillin on Municipal Ordinances, sec. 140; *German Sav. and L. Soc.* v. *Ramish,* 138 Cal. 130; *Spaulding* v. *Homestead etc. Assn.,* 87 Cal. 45; *Farmers etc. Bank* v. *Board,* 97 Cal. 328; *People* v. *Los Angeles,* 133 Cal. 342.)

7. It is claimed that the contract was awarded at a time when the council was not lawfully in session. There is nothing in the point, even if we concede that the curative clause does not place it beyond inquiry. It is alleged that the council, being in session the day before, had adjourned that session to the next day at ten o'clock, but that in fact said adjourned session was called to order and began to transact business at nine o'clock, and that the contract was awarded on that day. It is not alleged that the contract was awarded before ten o'clock, and it will certainly not be presumed that such was the fact. Further comment is unnecessary.

8. With regard to the supposed defect in the certificate attached to the record of the assessment and in the record itself, it may be further said that the facts alleged show no such irregularity. It appears that the warrant, assessment, diagram, and engineer's certificate were copied in the proper book by the street superintendent, and that the certificate was in the following words, written underneath them: "Recorded

CXLVI. Cal.—24

9:15 a. m. Apr. 11, A. D. 1896. P. A. Howard, Street Superintendent City of Los Angeles." The criticism seems to be that the documents may have occupied several pages of the record, and the certificate is insufficient because it does not expressly state that all of the documents were recorded at that time. This, however, is implied from the words used and the place where they appear immediately following the documents, coupled with the further consideration that the law required all these documents to be recorded by that officer in that book. This would be a sufficient showing to admit the record in evidence, and it by no means justifies or authorizes the conclusion that the documents, or any of them, were not recorded at the time stated.

9. Section 2 of the Vrooman Act provides: "that whenever the grade of a street shall hereafter be changed, the petition of the owners of a majority of the feet fronting thereon, asking for grading the same to the new grade, shall be a condition precedent to the ordering of such grading to be done." It is alleged that the grade had been changed before the proceedings here involved were begun, and that the change of grade was made upon a petition which was not signed by the owners of the major part of the frontage, as required by section 38 of the act as amended in 1893. (Stats. 1893, p. 89.) It is further alleged, in effect, that the resolution of intention to do the work for which these bonds were issued, was preceded by and founded upon a petition asking that the street be graded to the new grade, which petition was not signed by the owners of a majority of the frontage, as required by section 2 above quoted. Hence, it is claimed the proceeding was unauthorized and the bonds void. In *German Sav. and L. Soc.* v. *Ramish,* 138 Cal. 130, it is said that in such a case the passage by the council of the resolution of intention to do the work "is itself conclusive evidence that at its passage the persons whose names appeared upon the petition were owners of a majority of the frontage," and this seems to answer the contention. A further and sufficient answer to the point is, that, as pleaded, it is completely self-destructive. The act of 1893 aforesaid relating to a change of the theoretical grade just as positively requires the filing of a petition therefor by the owners of a majority of the frontage, as a condition precedent to the change, as does section 2 of the Vrooman Act

above quoted, in case of an order for the grading to be done. If the absence of such petition would render the proceeding void in the latter case, it would have the same effect upon the former. Hence, taking the whole allegation as true, as we must, it follows that the order purporting to change the theoretical grade was itself void; or, in other words, that there has been, in contemplation of law, no change of the grade such as is contemplated by the quoted clause of section 2 aforesaid. There having been no change of grade, there was no necessity for any petition of property-owners as a condition precedent to the power of the council to order the grading done to the legal grade. The bonds are unaffected by the filing of an insufficient petition purporting to be made in pursuance of a provision not applicable to the case. The resolution to do the work of grading does not specify any particular level, altitude, or grade to which the surface of the street must be reduced or raised, and it must therefore be taken to refer to whatever grade was then lawfully established.

10. In regard to the contents of the certificate of the city engineer recorded with the assessment, it should be said that the act nowhere specifies what such certificate shall contain, nor requires that any such certificate shall be made. If the street superintendent finds himself able to make the assessment without the aid of any certificate from the engineer, there is nothing in the statute forbidding him from doing so. If he procures such certificate to aid him, the statute requires that the same, whatever it contains, must be recorded. Only that and nothing more. (*Reid* v. *Clay,* 134 Cal. 215; *O'Dea* v. *Mitchell,* 144 Cal. 374.)

11. The description of the bonds in the resolution of intention was sufficient. It specifies that the bonds shall be issued to represent the cost of the improvement, and shall be serial, extending over a period of ten years, an equal portion to be paid annually on the second day of January of each year after their date, and to bear interest at seven pen centum per annum, payable semi-annually on the second days of July and January. This, in connection with the positive requirements of the statute concerning the form and contents of the bonds, describes them sufficiently. It is not intended that the resolution should copy the proposed bonds in full.

12. We can see no reasonable objections to the form or suffi-

ciency of the contractor's return upon the assessment. It was not necessary that it should state with whom the street superintendent contracted. The warrant was in favor of Stansbury and Moore. The return was made by Moore, and states that he is the contractor named in the assessment, diagram, and warrant. Moore was certainly named in the warrant, and as the diagram and assessment are not in the record we must presume that they also name him, so that the statement is not untrue, even if Stansbury was also named and the statement was material. It is clearly shown therein that the demand was made by virtue of the warrant, though it is not expressed in the same language as that which counsel for respondent uses in his brief to express the same idea. Besides, these irregularities, if material, are cured by the conclusive evidence clause.

The conclusion is that the complaint sets forth no irregularity in the proceedings which is not cured by the Bond Act, and hence that the bonds of the defendant are valid and the complaint does not state a cause of action. The judgment must be therefore reversed.

The writer of this opinion was the judge of the court below who presided when the judgment was rendered. He desires to say that the judgment was given on default, *ex parte*, and without any consideration of the effect of the curative provision here discussed.

13. The appeal from the order refusing to vacate the default may as well be dismissed. The reversal vacates the judgment, and no further proceedings can be had in the court below, except upon an amended complaint, which must be served on the defendant. This will necessarily open the default. The appeal, therefore, presents a question wholly immaterial to the rights of the parties, except as to costs, and as the two appeals are presented on the same transcript and briefs the appellant will recover all costs.

The appeal from the order is dismissed, and the judgment is reversed with costs.

Angellotti, J., Van Dyke, J., and Beatty, C. J., concurred.

HENSHAW, J., dissenting.—I dissent, and adhere to the subjoined opinion heretofore rendered in department. I think the correct rule for the interpretation of the statute in

question was laid down in *Ramish* v. *Hartwell,* 126 Cal. 443, which case, and others which have followed its construction of the law, are reversed by the prevailing opinion. Moreover, they are reversed upon a line of authority dealing with the general taxing power, which is not only a high prerogative power of a government itself, but one whose daily exercise is necessary to the very existence of the government. It is natural, therefore, that in dealing with questions of the collection of taxes—the very life-blood of a nation's existence—to find courts construing somewhat liberally curative acts, and looking in their interpretation to discover but one thing—namely, whether the subject who is taxed has had his day in court. But I do not believe it was the intention of our legislature—nor yet necessary to a construction of this law—to clothe street contractors with this high governmental prerogative, and by putting a bond for street-work in their hands to declare, as is declared in the opinion, that the property-owner is forever, and in every forum, shut out from the right of contesting its legality.

McFarland, J., and Lorigan, J., concurred in the dissenting opinion.

The following opinion was rendered in Department Two, April 2, 1904:—

HENSHAW, J.—This action was brought to quiet plaintiff's title against a lien upon her lands claimed by defendant by virtue of his ownership of certain street bonds. The plaintiff sought to have the bonds, the assessment, the warrant, the diagram, and the proceedings for the street-work and the contract for it so far as they affected her lands declared to be null and void, and sought further to have the bond delivered to the clerk of the court and by him canceled. The complaint is therefore in its nature a bill of peace against the outstanding street bonds. Defendant made default, and the judgment granted plaintiff the relief sought. Defendant appeals from that judgment, and from the order of the court refusing to vacate his default.

The questions here presented have to do with the provisions of the general street laws of the state, the Vrooman Act, and

the Street Bond Act (Stats. 1893, p. 33). The latter portion of section 4 of said last-named act, after setting forth the conditions whereunder and the terms whereby such bonds may be issued, provides as follows: "Said bonds, by their issuance, shall be conclusive evidence of the regularity of all proceedings thereto under said Street Work Act and this act, previous to the making of the certified list of all assessments unpaid to the amount of $50 or over by the street superintendent, to the city treasurer, and of the validity of said lien, up to the date of said list." In *Ramish* v. *Hartwell,* 126 Cal. 443, this conclusive-evidence clause, as it may for convenience be called, was considered by this court. It was there determined that the provision making the bond conclusive evidence of the validity of the lien was unconstitutional and void, as depriving a person of his property without due process of law, and the true rule regarding the extent and scope of the operation of the conclusive-evidence clause is distinctly and succinctly laid down. It is there said: "We have seen that the legislature had the authority to declare that the issuance of the bond should be conclusive evidence of certain facts, provided such facts were not essential to the jurisdiction of the officers to create the assessment; and to the extent that the legislature could exercise this power it should be upheld. In the first portion of the sentence above quoted the legislature has not assumed to make the bond conclusive evidence of the existence of any jurisdictional fact, or that any step essential to the creation of an assessment has been taken, but has merely declared that it shall be conclusive evidence of the 'regularity' of all proceedings prior thereto. This clause does not necessarily imply that any proceedings were in fact taken, but is limited to the 'regularity' of such as were taken, and leaves the owner at liberty to show in defense of his property that no jurisdiction to authorize the work or make the assessment was in fact acquired."

Under the rule here laid down, which may not be gainsaid, we may turn without further discussion or citation of authorities to the attacks made by the complaint against the validity of the bonds; attacks which for the purposes of this appeal are to be taken as true upon all matters of fact properly averred. These attacks are some fifteen or more in number, but it will not be necessary to consider them all, since the

grounds of some of them at least are well taken, and they are sufficient to invalidate the bonds in question.

1. It appears that the contract was dated upon September 28, 1895, and the work was to be completed "one hundred and twenty days thereafter." This means the designated number of days after the date of the contract. (*Palmer* v. *Burnham,* 120 Cal. 366.) The time for the completion of the work as originally fixed expired on the twenty-sixth day of January, 1896. The only extension of time was that granted by the council on February 3, 1896, and was made by the street superintendent on February 6, 1896, when a forty days' extension was attempted to be given. Under a numerous and unbroken line of authorities, the council did not have the power to authorize the extension after the time for the completion of the contract had expired, and the assessment which followed would be void. (*Turney* v. *Dougherty,* 53 Cal. 619; *Beveridge* v. *Livingstone,* 54 Cal. 54; *Mappa* v. *Los Angeles,* 61 Cal. 309; *Fanning* v. *Schammel,* 68 Cal. 429; *Dougherty* v. *Coffin,* 69 Cal. 455; *Brock* v. *Luning,* 89 Cal. 319; *Palmer* v. *Burnham,* 120 Cal. 354.)

This radical defect, however, appellant insists, is cured by the conclusive-evidence clause of the Bond Act, and herein the reasoning is that the conclusive-evidence clause of the act is in its nature curative, and validates anything and everything done or not done, jurisdictional or otherwise, the doing of which the legislature might in the first instance have dispensed with. This, within certain limitations, is true, but the limitations are set forth in *Ramish* v. *Hartwell,* 126 Cal. 443, and are all important. If, for example, the legislature has prescribed certain steps as being necessary to the acquirement or exercise of jurisdiction, the omission to take these steps will not be rectified by the conclusive-evidence clause, nor will it be an answer to say that the legislature might have dispensed with them or substituted others for them. It must be remembered that the conclusive-evidence clause was not designed to confer, and could not, if it were designed, confer, any added or new jurisdiction, nor can it be construed to permit the acquirement of jurisdiction by pursuing a mode other than the one which the legislature has advisedly prescribed. As well might it be said that because the legislature could have provided for personal service of the notice of street-work

instead of service by publication and posting, notice by publication and posting was utterly dispensed with under the provisions of the conclusive-evidence clause. It could not be dispensed with even if it were shown that actual notice was in fact given to every property-owner, because the mode prescribed is a process of law and the only process ordained by law for charging the property-owner with notice. So, in this instance, it has been held by all of the decisions that, after the expiration of the time fixed for the completion of the contract, the council has not "power" to extend the time for the completion of the work. Lacking power, they lack jurisdiction, and an attempt to extend the time under such circumstances is an act in excess of jurisdiction rendering subsequent proceedings void. Nor does it matter that the legislature might have authorized the council to extend the time after such default upon the part of the contractor. The fact remains that it has not done so, and, as has been said, the conclusive-evidence clause was not designed to confer any new or added jurisdiction upon the council, but merely to correct irregularities in proceedings done within their jurisdiction.

2. The specifications under which the street improvement was made delegated powers which the law requires to be exercised by the council. Without setting forth these specifications, it is sufficient to say that they are identically the same as those discussed and condemned in *Chase* v. *Scheerer,* 136 Cal. 248, and substantially identical with those likewise condemned in *Stansbury* v. *White,* 121 Cal. 435, and *Chase* v. *Treasurer of Los Angeles,* 122 Cal. 541. The acquirement by the council of jurisdiction to order the work done means no more than that it acquires jurisdiction to legally order the work done. The conclusive-evidence clause cannot operate to cure a defect of this nature—a defect going to the very exercise of the jurisdiction which the council had acquired. It was not within their jurisdiction to delegate these powers to the street superintendent, and for the reasons above given, under subdivision 1, the conclusive-evidence clause cannot be construed to rectify proceedings taken by the council in excess of its jurisdiction and in violation of its powers.

3. The motion to vacate the default was based upon an alleged mistake in law upon the part of the defendant, who

believed that the defects pleaded in the complaint were unanswerable and fatal to the validity of his bond. As the sole ground for vacating the default was that this belief was mistaken, and as appears from the foregoing it was not a mistaken belief, the trial court properly refused to make the order.

The judgment and order appealed from are therefore affirmed.

McFarland, J., and Lorigan, J., concurred.

The following opinion was rendered by the court in Bank on petition for rehearing March 31, 1905:—

SHAW, J.—On petition for rehearing.

The petition for a rehearing is denied.

In response to an objection urged somewhat at length in the petition for a rehearing, we think it proper to say that a mortgagee of property affected by a street assessment has the right of appeal to the city council secured by section 11 of the Vrooman Act (Stats. 1885, p. 156), as fully as the owner of the property. The rule of strict construction in regard to proceedings to assess property for local public improvements does not apply to those provisions of the law which are made for the benefit of the property-owners to enable them to present objections to irregularities in the proceedings. With respect to such provisions the statute will be liberally construed in favor of the person interested. (*City Street Imp. Co.* v. *Babcock*, 139 Cal. 692.) The provision that "all other persons directly interested in any work provided for in this act or in the assessment" may appeal to the council is intended to allow any person to appeal who has a direct interest, either as a lienholder, or as owner in any property affected by the assessment, and to distinguish persons having such direct interest from those who have an interest only as members of the body usually designated as the public.

Beatty, C. J., Angellotti, J., and Van Dyke, J., concurred.