PINTARIC, PLAINTIFF-APPELLANT, *v.* MCHALE ET,
DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26757.   Decided January 23, 1964.

*Messrs. McCafferty & Perelman,* for plaintiff-appellant.
*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Frederick W. Frey,* assistant prosecuting attorney, for defendants-appellees.

CORRIGAN, J. This cause before us is an appeal on questions of law from a judgment of the Court of Common Pleas of Cuyahoga County overruling the appellant's petition for temporary and permanent restraining orders and other equitable relief and "contest of election."

Appellant, Steve J. Pintaric, was a candidate in a primary election for the office of councilman in Ward 7 of the City of Garfield Heights on October 1, 1963. There were three candidates, and under the Charter of Garfield Heights the two receiving the greatest number of votes in the primary would be on the ballot for the runoff election in November. The results of the primary election were as follows:

John L. McHale                380
Joseph Jacko                  320
Steve J. Pintaric             294
(appellant)

Following the official count, the appellant requested, paid for, and secured a recount of all nine precincts in Ward 7. The recount was productive of no change in the totals. However, it was discovered that in Precinct C of Ward 7, the unused ballots and the stubs of the tablet of 200 ballots which had been furnished to the election officers of Precinct C were not available for examination as part of the recount. No one knew, according to the testimony adduced at the trial why these unused ballots and the stubs were missing. There were 86 ballots used in Precinct C. The tablet which was provided to the booth officials had 200 sheets, each comprised of two stubs and a ballot, and was bound at the top in accordance with the provisions of Section 3505.08, Revised Code. Each sheet is perforated in two places, the one perforation line permitting the lower Stub A and the ballot to be evenly separated from the upper Stub B, and the second perforation line permitting the ballot to be evenly separated from Stub A.

Each of the two stubs attached to each ballot bears the same number, and the sheets are numbered consecutively through the tablet. When a voter is given a ballot at the time of voting, the ballot has not been separated from Stub A. The ballot and Stub A are separated on the perforated line from Stub B which is left attached to the tablet. The number on the

94

stubs is then recorded in the poll book after the signature of the elector which is signed in the poll book when he comes in to vote. When the voter has marked his ballot, he returns it to the booth official folded with Stub A still attached. He then gives his name to the judge having charge of the ballot boxes. This official then announces the name, detaches Stub A from each ballot, and announces the number on the stubs. The clerks in charge of the poll books then check to ascertain if the number so announced is the number on Stub B of the ballot issued to such voter, and if no discrepancy appears to exist, the judge in charge of the ballot boxes, in the presence of the voter, deposits each ballot in the proper ballot box and places Stub A from each ballot in the container provided therefor. This procedure is provided for in Section 3505.23, Revised Code.

The procedure at the close of the polls is set forth in Section 3505.26, Revised Code. That section provides in part as follows:

"* * *

"(F) Put the unused ballots with stubs attached, and soiled and defaced ballots with stubs attached, in the envelopes or containers provided therefor, certify the number, and then proceed to count and tally the votes in the manner prescribed by Section 3505.27, Revised Code, and certify the result of the election to the board of elections."

Section 3505.31, Revised Code, details the disposition of the ballots and other election records after the results have been determined in a polling place and their delivery to the Board of Elections.

The poll book from Precinct C contains a certification that there were 114 unused ballots. The poll book also has a certification that 86 persons voted, and there are 86 stub numbers recorded in the poll book. The bag containing the A stubs reveals a total of 86 such stubs. But the bag containing the unused ballots and the B stubs for the used ballots is missing. The Clerk of the Board of Elections, testifying for the defendants, said that the booth officials were called when it was discovered that the unused ballots were missing, and they did not know what happened to them. The only explanation the presiding judge was able to give to the Clerk was that if they failed to put them

in the ballot bag, perhaps they inadvertently put them in the grip. The grip is the small satchel which is used to transport the registration book to and from the polling places. The employees who clean out these grips at the end of each election had not seen any unused ballot bag.

Inadvertently or otherwise, it is clear from the record that the election officials of Precinct C violated the specific provisions of Section 3505.26, Revised Code, in connection with the handling of the unused ballots after the voting and count. Such an example of gross carelessness cannot be too severely condemned. Each step in the most important democratic process of conducting a free election has been carefully thought out and spelled out by the legislature of Ohio. Each rule of action set forth for the guidance of the various persons participating in the process is equally important. That these rules be honestly, conscientiously, and carefully carried out by such officials is the true guaranty of the sanctity of the ballot box under our system of government. To countenance any other standard of conduct for these officials is abhorrent to the concept of justice that is deep in the heart of every true American. Proper steps should be taken by the Secretary of State of Ohio, the chief election official, to insure that the mandates of the election laws be carried out literally.

Perhaps a check list furnished by the Secretary of State would be helpful in emphasizing each step to be taken and requiring each item to be checked when it is accomplished, with a certification thereon from the presiding judge when the delivery of the ballots and other records to the Board of Elections is finally fulfilled. Or, the Secretary of State could devise some other procedure or plan that would point up the extreme importance of the election officials slavishly adhering to the letter of the election laws.

While all provisions of the election laws are mandatory in the sense that they impose the duty of obedience upon those who come within their purview, nevertheless, irregularities not caused by fraud and which have not interfered with the full and fair expression of the voters' choice should not effect a disenfranchisement of the voters. Errors that are apparently made innocently and not in violation of substantial rights of

electors are not grounds for invalidating an election. Mistakes or mere omissions on the part of election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not render an election invalid unless they affect the result of the election or render it uncertain. In this case, the record does not reflect any fraud or attempt to deceive or mislead. The fact that the bag of unused ballots was missing and unavailable for the purposes of recount lends itself necessarily to dire tattle as to the honesty of the election. This is unfortunate. But we may not conjecture in connection with such a serious matter. Clear and convincing proof of fraud or of the fact that the mistake of the election officers of Precinct C does affect the result of the election or render it uncertain would be required to warrant judicial interference with the result of this election. In passing, it should be observed that the court did not have the benefit or advantage of the testimony of the six booth officials. The only testimony for the plaintiff came from plaintiff himself, principally to the effect that the unused ballots were not available for the recount. The only other testimony was for the defendants from the Clerk of the Board of Elections who was permitted in the court below to give hearsay testimony and speculate therefrom.

The record not showing otherwise, we believe the election here contested expresses the free choice of the qualified electors of Ward 7 of the City of Garfield Heights, and the judgment of the Court of Common Pleas is affirmed.

Exceptions. Order see journal.

KOVACHY, P. J., SILBERT, J., concur.