[Civ. No. 432. Fifth Dist. Mar. 8, 1965.]

THE PEOPLE EX REL. DESERT HOT SPRINGS COUNTY WATER DISTRICT, Plaintiff and Appellant, v. COACHELLA VALLEY COUNTY WATER DISTRICT, Defendant and Respondent.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Thompson & Colegate, F. Gillar Boyd, Jr., Cosgrove, Cramer, Rindge & Barnum and J. D. Barnum, Jr., for Plaintiff and Appellant.

Redwine & Sherrill and Maurice C. Sherrill for Defendant and Respondent.

BROWN (R. M.), J.—The People of the State of California, through the Attorney General, filed a suit on relation of Desert Hot Springs County Water District to test the validity of the annexation to the respondent, Coachella Valley County Water District, of six parcels of land situated within the boundaries of the real party in interest and appellant. After a trial, the respondent had judgment. Only questions of law were presented at the trial, and are presented on this appeal, which are: (1) Can land within the territorial boundaries of Desert Hot Springs be validly annexed without its consent? (2) Were the annexations, if invalid for lack of consent, validated by the provisions of the First Validating Act of the 1962 Legislature?

On November 14, 1961, the respondent, a county water district, adopted ordinances Nos. 904 and 906 for the purpose of annexing six parcels of land which had become a part on June 12, 1961, of the territory of the Desert Hot Springs County Water District.[1] On January 8, 1962, the Secretary of State issued his certificate indicating the filing of ordinances Nos. 904 and 906 of respondent, which action completed the annexations set forth in the two ordinances. On April 12, 1962, the First Validating Act of 1962 became effective (Stats. 1963, First Ex. Sess. 1962, ch. 16, p. 173).

Desert Hot Springs directed a letter on March 28, 1962, to the president and board of directors of respondent suggesting a meeting of the two boards for the purpose of discussing the annexations. On April 20, 1962, the president of the board of Desert Hot Springs again addressed a letter to Coachella advising that the annexations were void and demanding the rescission of the ordinances. On May 3, 1962, Desert Hot Springs directed its counsel to prepare quo warranto proceedings and the necessary papers were served on Coachella on May 14, 1962. On July 5, 1962, the Attorney General granted to Desert Hot Springs permission to sue and issue summons. Then on July 9, 1962, a complaint was filed alleging the lack of consent to the annexation and that the same was void.

After a trial, judgment was rendered in favor of Coachella. The pertinent portions of the trial court's findings were that the consent of Desert Hot Springs, the plaintiff, was not required, and that even if consent had been required for the annexation, such annexation was validated by the First Vali-

---

[1]Hereinafter referred to as Desert Hot Springs.

dating Act of 1962. It concluded that the annexation pursuant to ordinances Nos. 904 and 906 is valid.

■ Appellant contends that the annexations are prohibited by Water Code section 30065 in that that section requires its prior consent to annexation of land within its territory to respondent.

The county water district law was codified in 1949. (Division 12 was added in Statutes of 1949, chapter 274 at page 494. Derivation, Statutes of 1913, chapter 592; Statutes of 1933, chapter 873.)

Water Code section 30065 reads as follows: ''The inclusion in, or annexation or addition to, a county water district, of all or any part of the corporate area of any public corporation or public agency, shall not destroy the identity or legal existence or impair the powers of any such public corporation or public agency, notwithstanding the identity of purpose, or substantial identity of purpose, of such county water district.

''No public corporation or public agency having identity of purpose or substantial identity of purpose shall be formed partly or entirely within a county water district existing under the provisions of this code without the consent of such county water district.

''All county water districts heretofore formed partly or entirely within another county water district previously existing under the provisions of this code, *with or without the consent of such previously existing county water district* and for a purpose not then actually exercised, or to provide a service not then provided by said previously existing county water district, are hereby declared to be valid and legally existing districts.'' (Added Stats. 1957, ch. 1728, § 1, p. 3109, as amended Stats. 1959, First Ex. Sess., 1958, ch. 45, § 1, p. 249.) (Italics added.)

Appellant properly contends that the word ''formed,'' as used in the second paragraph above, includes annexations and hence, that its consent is an essential prerequisite to respondent's annexation proceedings.

A similar section relating to annexation to municipal water districts (Wat. Code—App. § 20-33 [Deering's Water Code, Act 5243, § 33; Stats. 1955, ch. 1318, § 9]) has been construed to include annexations of the territory of one municipal water district to another municipal water district. That section reads as follows: ''The inclusion in, or annexation or addition to, a municipal water district, of the corporate area of any public corporation or public agency, shall not destroy the

identity or legal existence or impair the powers of any such public corporation or public agency, notwithstanding the identity of purpose, or substantial identity of purpose, of such municipal water district. Except for formation proceedings commenced before the effective date of the amendments to this act made by the 1955 Regular Session of the Legislature, no public corporation or public agency having identity of purpose or substantial identity of purpose shall be formed partly or entirely within a municipal water district existing under this act without the consent of such municipal water district.''

In 1963 the Municipal Water District Act of 1911 was repealed and the provisions of this act were reenacted as new sections of the Water Code, sections 71032 and 71033, the latter sections reading as follows:

''§ 71032. The inclusion in, or annexation or addition to, a district, of the territory of any public corporation or agency shall not destroy the identity or legal existence, or impair the powers, of the public corporation or agency, notwithstanding the identity, or substantial identity, of purpose of the district.''

''§ 71033. No public corporation or agency having identity, or substantial identity, of purpose shall be formed partly or entirely within a district without the consent of the district.''

The question of whether section 20-33 [Deering's Water Code, Act 5243, § 33; Stats. 1955, ch. 1318, § 9], as it read prior to the 1963 amendments, applied to annexations was presented to the court in the case of *Hidden Valley Municipal Water Dist.* v. *Calleguas Municipal Water Dist.*, 197 Cal. App.2d 411 [17 Cal.Rptr. 416]. There, the plaintiff instituted an action to terminate the annexation proceedings and sought an injunction against further proceedings. Defendant's demurrer was sustained without leave to amend and the action was dismissed. On appeal the appellate court was called upon to answer a single question, namely, ''Can the territory of plaintiff be annexed as contemplated without its consent?'' The answer was in the negative. The determination turned upon the court's interpretation of the word ''formed'' as used in the section by the Legislature. At page 418 of the opinion the court said: ''We shall not attempt an analysis and appraisal of the persuasive arguments found in the briefs of both parties, the excellence of which enhances, rather than lessens, the difficulty of a choice between the opposing theories.

We have concluded that the word 'form' should not be interpreted to mean only creation of a district by original proceedings, and that while it undoubtedly is the most appropriate word to be used with reference to original proceedings, it also should be interpreted in the present case to mean, 'coming into being' by annexation. Such application does not do violence to customary use and meaning of the word.

"There is but a single purpose discoverable in section 33, as a whole, namely, the consequences of the inclusion, in whole or in part, of the territory of an existing district into another existing district, or a district to be newly created of greater area. The district that is included does not cease to exist; two organizations exist having 'identity of purpose, or substantial identity of purpose.' But lest this condition shall be created in all cases, it is provided that the district sought to be absorbed or included may maintain separateness by refusing to give its consent."

And at page 420, it was stated: "Having reached the conclusion that it was the intention of the Legislature to preserve the right of the district sought to be included or absorbed to maintain its separate territorial existence and that the act as framed may be reasonably interpreted as appropriate to accomplish that purpose, there is no alternative to our holding plaintiff's territory cannot be annexed in the pending proceedings without its consent."

As we read the *Hidden Valley* case, it seems to us that the decision rests not so much on the fact that the word "formed" is capable of two constructions, but what the Legislature reasonably intended. No reason was found for the proposition that the right of a smaller district to maintain separate existence was intended to be preserved when it was sought to be included in the original organization of a larger district, and the right denied when it was sought to be taken by annexation. Thus, a district which refused to consent to its inclusion in a proposed new district would have no effective right to resist inclusion. A new district could be created, excluding the territory of the existing district, and immediately thereafter inclusion of the latter, against its consent, could be accomplished by proceedings for its annexation. The court said that any intention of the Legislature to preserve the right in original proceedings and deny it in annexation proceedings would have to be expressed in clear and unmistakable language, and that such intention should be rejected if the language employed reasonably justified its rejection

(p. 419). Thus, it does not seem reasonable that the Legislature intended to preserve to a county water district the right to consent in original proceedings but deny it the right in annexation proceedings.

The logical reasoning of the court in the *Hidden Valley* case is applicable to county water districts as well as municipal water districts, and thus, the consent of Desert Hot Springs was a condition precedent to annexation of its land by Coachella.

The second point for consideration is whether or not the annexations were validated by the First Validating Act of the 1962 First Extraordinary Session of the Legislature. It became effective April 12, 1962, and provides in part (Stats. 1963, First Ex. Sess., 1962, ch. 16, p. 173 at pp. 175, 176):

"Sec. 4.   All acts and proceedings heretofore taken by any public body under any law, or under color of any law, for the annexation or inclusion of territory into any such public body or for the annexation of any such public body to any other such public body or for the withdrawal or exclusion of territory from any such public body are hereby confirmed, validated, and declared legally effective. This shall include all acts and proceedings of the governing board of such public body and of any person, public officer, board or agency heretofore done or taken upon the question of the annexation or inclusion or of the withdrawal or exclusion of such territory.

"Sec. 5.   .       .       .       .       .       .       .       .       .

"Sec. 6.   (a) The foregoing provisions of this act shall operate to supply such legislative authorization as may be necessary to validate any such acts and proceedings heretofore taken which the Legislature could have supplied or provided for in the law under which such acts or proceedings were taken.

"(b) The foregoing provisions of this act shall be limited to the validation of acts and proceedings to the extent to which the same can be effectuated under the State and Federal Constitutions.

"(c) The foregoing provisions of this act shall not operate to confirm, validate, or legalize any act, proceeding, or other matter the legality of which is being contested or inquired into in any legal proceeding now pending and undetermined or which may be pending or undetermined during the period of 30 days from and after the effective date of this act, and shall not operate to confirm, validate, or legalize any act,

proceeding, or other matter which has heretofore been determined in any legal proceeding to be illegal, void or ineffective.

"(d) . . . . . . . . . .

"Sec. 7. Any action or proceeding contesting the validity of any action or proceeding heretofore taken under any law, or under color of any law, for the formation, organization or incorporation of any public body, or for any annexation thereto, exclusion therefrom or other change of boundaries thereof, or for the authorization, issuance, sale or exchange of bonds thereof upon any ground involving an alleged defect or illegality not effectively validated by the prior provisions of this act and not otherwise barred by any statute of limitations or by laches must be commenced within six months of the effective date of this act; otherwise each and all of said matters shall be held to be valid and in every respect legal and incontestable. This subsection [sic] shall not extend the period in which any action may be brought beyond the period in which it would be barred by any presently existing valid statute of limitations."

The appellant contends that the First Validating Act does not prevent the maintenance of this action nor does it have the effect of validating the annexations of Coachella because (1) the annexations were void from the beginning and no subsequent act of the Legislature could validate them; (2) the First Validating Act violates vested rights without due process of law; (3) and (4) section 6, subdivision (c) and section 7 allow maintenance of this action; and (5) the Legislature did not intend for the First Validating Act to authorize "multiple annexations." Appellant contends that the First Validating Act is a statute of limitations.

In *People* ex rel. *Forde* v. *Town of Corte Madera,* 115 Cal. App.2d 32 [251 P.2d 988], the court held that if the annexation was void from the beginning no statute of limitation will ever give it validity. At page 40 it was said: "Curative legislation, however, cannot be used as against a prior valid proceeding to breathe life into a subsequent proceeding which, from its very inception, was, as against the prior proceeding, void and violative of the state's statutory law. None of the appellants' cases, except one, even hints at the proposition that a statute of limitations provision can breathe life into a void later instituted proceeding as against a valid prior instituted proceeding. . . .

"Upon general and fundamental principles, we are convinced that the curative provisions of section 349½ of the

Code of Civil Procedure will cure any failure to comply with the procedural provisions of the annexation statute, but we are equally convinced that such section cannot operate, as against a prior valid proceeding, so as to vitalize a completely invalid subsequent proceeding.''

Appellant also relies on *People* v. *Van Nuys Lighting Dist.*, 173 Cal. 792, 797 [162 P. 97, Ann.Cas. 1918D 255], where it is said: ''We need not determine in this case whether or not the corporation was wholly void. It is enough that it was void in so far as the land of the relator is concerned. The lighting district, and the defendants as *ex officio* its managing board, were without authority to exercise any of the powers given to them by the act of 1909 and the amendments of 1913 [Stats. 1913, p. 447] thereof, upon or over the relator's land. To that extent, at least, the defendants claimed and usurped a corporate franchise which they did not lawfully possess.

''The respondents call our attention to the act of May 29, 1915, effective August 8, 1915 (Stats. 1915, p. 939), declaring that every lighting district established under the provisions of the act of 1909, by resolution of the board of supervisors of the county, entered in its minutes, is a valid lighting district from the date of such order, and that all proceedings and actions of such district under said law are ratified, affirmed, and declared to be legal. . . .

''A curative act or a conclusive evidence clause in a statute is effective to cure all defects resulting from a failure to comply with provisions which are merely directory of the mode of the exercise of the power. But defects and omissions which go to the jurisdiction of the board to act at all, and which make their action absolutely void, cannot be cured in this manner.''

At page 800, the Supreme Court concluded: ''The attempt to validate a tax levied by a pretended corporation having no legal authority over the property taxed would, if given effect, be equivalent to the imposition of an obligation by statute without due process of law.''

In *Miller* v. *McKenna*, 23 Cal.2d 774 [147 P.2d 531], the court held that where proceedings are so defective that no title passes, a curative act cannot be used to validate a tax sale to be effectual to transfer title. The dissent of Justice Traynor set forth that the sale did not violate any constitutional provision or involve something that could not have been previously authorized by the Legislature, and thus was cured by the curative act.

It is argued that to permit annexation under the facts of this case would result in a direct violation of due process in that (1) an individual's land might be included in two or more county water districts and subject to their taxation without any realistic notice, and (2) it directly affects the operation, tax structure, authority and control over water and other matters of the first district without said district's knowledge or consent. It is doubtful that the first reason has any merit. ▆ Individuals may choose to be in two water districts if they wish to do so, provided other requirements are met. Had appellant consented to this annexation in the first place the six parcels involved would be in two county water districts, subject to taxation.

▆ Section 6, subdivision (c) of the Validating Act does not, as Desert Hot Springs contends, allow the maintenance of this action. That section, fully quoted above, provides that the act shall not operate to validate any matter "the legality of which is being contested or inquired into in any legal proceeding now pending and undetermined or which may be pending or undetermined during the period of 30 days" from the effective date, that is, April 12, 1962. This action was not filed until July 9, 1962, though appellant argues that legal proceedings were pending within 30 days after the effective date of the act because the directors had authorized its counsel to initiate legal action and such papers were being prepared, and that all of such actions by the board of directors were within 30 days after the effective date of the Validating Act.

While Water Code section 1075 defines "proceeding" as "any inquiry, investigation, hearing, ascertainment, or other proceeding ordered or undertaken by the department or any agency thereof pursuant to this division," that section relates to the powers of the State Water Rights Board in administrative proceedings. ▆ Judicial powers conferred on the State Water Rights Board may not be borrowed by a county water district.

In *Firestone Tire & Rubber Co.* v. *Board of Supervisors,* 166 Cal.App.2d 519 [333 P.2d 378], the court stated that it was the intent of the Legislature in the 1958 Validating Act "to only exclude annexation proceedings which were being contested or inquired into in a proceeding before a court having the power to render a final judgment decreeing the invalidity of the proceedings."

As to section 7 of the Validating Act, as quoted above, the filing of the action was well within the six months, as set forth

therein. But this section covers only those phases that are not mentioned in section 6, subdivision (c), and such legal action would turn on whether or not lack of consent is within the curative power of the Legislature through a validating act being within section 6, subdivision (c).

The Validating Act supplies legislative authorization to validate the actions and proceedings heretofore taken which the Legislature could have supplied or provided for in the law under which said sections or proceedings were taken.

The general rule in regard to the operation and application of validating acts is set forth in section 948, 52 California Jurisprudence 2d, at pages 603 and 604, as follows:

"It is the general rule that whatever the legislature has power to authorize, it has power to ratify and confirm when done irregularly. Under this power, the legislature has passed many general acts, confirming in sweeping terms the existence, boundaries, and bond issues of irrigation districts and other public corporations of similar types. This is sometimes criticized as a reckless and dangerous species of legislation, which should be closely scrutinized and strictly construed. However, though a curative act cannot be applied to disturb vested rights, if the requirement that was not followed is one which the legislature could constitutionally have dispensed with, the irregularity can be cured by subsequent curative legislation."

The fact that the Legislature could constitutionally have dispensed with the question as to consent is noted in the third paragraph of section 30065 of the Water Code.

In *Rock Creek Water Dist.* v. *County of Calaveras,* 133 Cal. App.2d 141 [283 P.2d 740], it was contended by the county that the proceedings for inclusion were invalid. At pages 145-146 the court said: "The Legislature has directed the mode in which lands may be included within a water district and has delegated to the board of directors the power to proceed to that end, but only by substantial compliance with the statutory conditions. Those conditions are clearly stated. Not only does the statute say that no land shall be included unless it can be irrigated by some of the works of the district, but also that such irrigation must benefit said lands. In the instant case the property sought to be included could not conceivably be benefited by irrigation, even though irrigable in its natural state. We hold that the district in the inclusion proceedings did not comply with the statutory requirements and that for that reason the subject property was not included by

the action taken. That, however, does not mean that it is not now included.

"After the district had completed its proceedings for inclusion and had purportedly, by order of its board of directors, included the subject property within its boundaries, various validation acts were passed by the Legislature. We think we need refer only to the earliest of these, found in chapter 781 of the Statutes of 1949. This act is known as the 'Validating Act of 1949' and it took effect on June 30th of that year. After defining the term 'public body' as including water districts, the act provides as follows:

" 'All acts and proceedings heretofore taken by any public body under any law, or under color of any law, for the annexation or inclusion of territory into any such public body are hereby confirmed, validated, and declared legally effective. This shall include all acts and proceedings of the governing board of such public body and of any person, public officer, board or agency heretofore done or taken upon the question of the annexation or inclusion of such territory.
" ' .      .      .      .      .      .      .      .

" 'This act shall operate to supply such legislative authorization as may be necessary to validate any such acts and proceedings heretofore taken which the Legislature could have supplied or provided for in the law under which such acts or proceedings were taken.

" 'This act shall be limited to the validation of acts and proceedings to the extent to which the same can be effectuated under the State and Federal Constitutions.'

"That the Legislature could include the subject properties within the boundaries of the district by direct legislative action, that the Legislature could have authorized the inclusion by the district on its petition to itself, granted by itself, of these same properties, whether or not they were irrigable by the works of the district, and that appellant county had no vested right to continue to tax these properties once they were included, are matters settled by the decision of the Supreme Court in *County of Mariposa* v. *Merced Irr. Dist.*, above [32 Cal.2d 467 (196 P.2d 920)]. It is a general rule that whatever the Legislature has power to authorize to be done it has power to ratify and confirm when done irregularly or not in the mode previously described. Of course the curative act cannot be applied to disturb vested rights. [Citation.] Said the Supreme Court in *Miller* v. *McKenna*, 23 Cal.2d 774, 781-782 [147 P.2d 531]:

" 'The Legislature may cure irregularities or omissions to

comply with provisions of a statute which could have been omitted in the first instance. The rule is quoted from Cooley on Constitutional Limitations, at page 457, as follows: ''If the thing wanted or failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the manner or mode of doing some act, and which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.'' ' ''

To the same effect are *Chase* v. *Trout*, 146 Cal. 350 [80 P. 81]; *Northridge Park County Water Dist.* v. *McDonell*, 159 Cal.App.2d 556 [324 P.2d 102]; and *Fix* v. *Board of Supervisors*, 213 Cal.App.2d 524 [28 Cal.Rptr. 862]. ██ These cases clearly establish the rule that the only type of action which cannot be cured by a validating act is one which deprives a person of due process of law under the federal or state Constitutions, and no such violation is involved in the case before us.

██ Thus, we have come to the conclusion that consent was required in the first instance and such annexation proceedings were originally fatally defective, but that such proceedings are within the curative powers of the Validating Act. The landowners of the land annexed are still subject to the rules and regulations of Desert Hot Springs, as well as its taxation powers. There is no deprivation of any substantial legal right or property right on its part if those landowners are concurrently also subject to the rules, regulations and taxing procedures of Coachella. Thus, there is no violation of due process. ██ The Legislature could have conferred authority upon one county water district to annex the land of another water district, without the latter's consent, and the rule can be stated that ''the Legislature may supply through a validating act any authority which it could have supplied prospectively through an enabling act.'' (*Ventura Port Dist.* v. *Taxpayers, Property Owners etc. Ventura Port Dist.*, 53 Cal.2d 227, 233 [1 Cal.Rptr. 169, 347 P.2d 305].)

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 5, 1965.