[Civ. No. 33240.    Second Dist., Div. Five.    Aug. 12, 1968.]

HAMILTON DE JONG, Plaintiff and Appellant, v. PASADENA UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

---

Hamilton De Jong, in pro. per., for Plaintiff and Appellant.

John D. Maharg, County Counsel, James W. Briggs, Assistant County Counsel, Raymond W. Schneider and Eric Olson, Deputy County Counsel, for Defendant and Respondent.

MOOR, J. pro tem.*—Plaintiff alleging that he is a taxpayer and interested person within the meaning of section 21708 of the Education Code and section 863 of the Code of Civil Procedure brought this action in the superior court to test the validity of bonds issued pursuant to a school bond election. Defendant district filed a motion for summary judgment, filed affidavits in support thereof and plaintiff filed his affidavit in answer. Findings of fact and conclusions of law were signed and filed, the court specifically finding the action to be sham and frivolous; judgment in favor of defendant on its motion for summary judgment was granted. ■ Plaintiff appeals and defendant urges this court to dismiss the appeal on the grounds it is without merit and sham and frivolous.

We take cognizance of the fact that this action delays the sale of school district bonds, the proceeds from the sale thereof to be used for needed school construction; that if the bonds were properly issued a delay in determining this issue will result in a greater cash outlay due to rising construction costs and interest rates in the bond market. We consider these matters to be of grave public interest justifying a preliminary examination to determine the presence or lack of merit.[1]

■ Even a most cursory examination of plaintiff's affidavit filed in response to defendant's affidavit in support of its motion for summary judgment discloses that it raises no triable issue in this case.

This is an action authorized by statute and as such it is

---

*Assigned by the Chairman of the Judicial Council.

[1]*Robbins* v. *Sonoma County Flood etc. Dist.*, 138 Cal.App.2d 291, 293 [292 P.2d 52]; cf. *Corona etc. Hospital Dist.* v. *Superior Court*, 61 Cal.2d 846 [40 Cal.Rptr. 745, 395 P.2d 817].

limited by the conditions and restrictions set forth in the statute. Plaintiff's affidavit sets forth certain procedural irregularities by the precinct election workers and the district superintendent of schools occurring after the election. Plaintiff does not directly charge these irregularities to be fraudulent or to have in any way affected the actual election, but only that they opened the *possibility of fraud.* He does not specify the precise nature of the possible fraud or by whom it supposedly was perpetrated.

Plaintiff's affidavit in opposition to defendant's motion for summary judgment must be viewed in the light of the provisions of section 21708 of the Education Code.[2] The school district officials and the county registrar of voters certified to the regularity of the election proceedings.

▆ Next, plaintiff raises the question of the constitutionality of the application of section 1443 of the Education Code. This section became effective June 29, 1967, the election in this case having been completed June 6. After the original count of the ballots it appeared that the bonds failed by a few votes. At the time of the election the only provision for recount was contained in section 1442.3 of the Education Code which provided that an individual might make application to the county superintendent of schools for a recount. Section 1443 permits the governing board of the school district after complying with certain conditions to direct the county superintendent of schools to recount the votes. Plaintiff did not supply the trial court or this court with any authority supporting the proposition that plaintiff, as an individual, had a vested right in the results of the first count and that the subsequent recount pursuant to the provisions of section 1443 of the Education Code unconstitutionally deprived him of this right, nor, indeed, has the court been able to find such authority. Plaintiff does not contend that the Legislature was without authority to make procedural changes in the method of handling elections, a subject over which it has complete jurisdiction, nor does plaintiff point out any legal reason why defendant district could not or should not take advantage of the provisions of that section. In passing it should be noted that plaintiff does not contest the validity of the recount, that

[2]"An action to determine the validity of bonds and of the ordering of the improvement or acquisition may be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure. In such action, all findings, conclusions and determinations of the legislative body which conducted the proceedings shall be conclusive in the *absence of actual fraud.*" (Italics added.)

is to say, he does not contest the actual count of the ballots, nor does he contest the decisions as to the validity of the ballots counted by those conducting the recount.

The intention of the Legislature that mere irregularities in the conduct of an election which do not constitute actual fraud or deprive the voters of a substantial right are not sufficient to set aside an election is also found in section 866 of the Code of Civil Procedure (validation proceedings). Section 866 reads: ''The court hearing the action shall disregard *any error, irregularity, or omission which does not affect the substantial rights of the parties.''* (Italics added.) The irregularities in the election proceedings which plaintiff hopes to build into fraud consisted of the failure of the election precinct workers to comply with section 14438 of the Elections Code, requiring the defacing of unused ballots and section 1442, subdivision (b) of the Education code which reads: ''The envelope containing spoiled, canceled, and defaced unused ballots shall remain unopened in the custody of the county superintendent and shall be held and disposed of as is the envelope provided for in paragraph (a)[3] of this section.''

It is agreed by both parties that the election officials did not deface the unused ballots, but returned them to the county superintendent of schools where they were accounted for and then destroyed six days later. This failure to comply with two code sections did not affect the results of the election or the rights of any voters to vote. They were clerical errors which of themselves are conceded by plaintiff not to be fraud. It cannot be deemed to be anything but an irregularity by the election officials. To give it any other standing would permit such irregularity or omission on the part of the election officials to invalidate the action of the voters. The courts have so expressed themselves on this issue.

''Section 1207, Political Code, directs that before any ballot shall be taken from the ballot-box the ballot clerk must proceed to deface the unused and spoiled ballots by drawing across the face thereof in writing-ink with a pen two lines which shall cross each other, and shall immediately place all

---

[3]Section 1442, subdivision (a) reads: ''The sealed envelope containing the voted ballots, including ballots rejected for improper markings, shall be kept by the county superintendent unopened and unaltered for six months. If a contest or criminal prosecution is not commenced within the six months' period as provided in Division 11 of the Elections Code, he shall destroy the envelope, or have it destroyed, without its being opened or its contents examined. This paragraph also applies to absent ballots and identification envelopes.''

such defaced ballots within an envelope and seal such envelope, and a majority of the election officers shall write their names across the sealed portion of the envelope. The fact that none of the ballots were so defaced is unimportant and signifies little, for the reason that the provisions of this section, as well as those contained in section 1257, are merely directory. Electors of the precinct should not be disfranchised because the election officers fail to comply with provisions which do not go to the substance of the election. 'Mere irregularity on the part of election officers or their omission to observe some merely directory provisions of the law will not vitiate the poll.' (McCrary on Elections, § 225.) Says the same author (section 228) : 'Those provisions of a statute which affect the time and place of the election and the legal qualifications of the election are generally of the substance of the election, while those touching the recording and return of the legal votes received and the mode and manner of conducting the mere details of the election are directory' . . .'' (*Starkweather* v. *Dawson*, 14 Cal.App. 666, 672 [112 P. 736].)

In *Pintaric* v. *McHale* (1964) 5 Ohio App.2d 19 [195 N.E. 2d 606, at p. 608], the Ohio court of Appeals held: ''While all provisions of the election laws are mandatory in the sense that they impose the duty of obedience upon those who come within their purview, nevertheless, irregularities not caused by fraud and which have not interfered with the full and fair expression of the voters' choice should not effect a disenfranchisement of the voters. Errors that are apparently made innocently and not in violation of substantial rights of electors are not grounds for invalidating an election. Mistakes or mere omissions on the part of election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not render an election invalid unless they affect the result of the election or render it uncertain. In this case, the record does not reflect any fraud or attempt to deceive or mislead. The fact that the bag of unused ballots was missing and unavailable for the purposes of recount lends itself necessarily to dire tattle as to the honesty of the election. This is unfortunate. But we may not conjecture in connection with such a serious matter. Clear and convincing proof of fraud or of the fact that the mistake of the election officers of Precinct C does affect the result of the election or render it uncertain would be required to warrant judicial interference with the result of this election. . . .''

The next point which the trial court considered in granting

the motion for summary judgment is one to which this court must give great weight and, in fact, such weight that if there were no other substantial reasons for affirming the order of the trial court this point would be sufficient.

The Legislature in its 1967 Regular Session passed an act, AB 44: "An act to validate the organization, boundaries, acts, proceedings and bonds of public bodies, as herein defined, and to provide limitations of time within which actions may be commenced in connection therewith, declaring the urgency thereof, to take effect immediately." School districts were included within this act. The act became effective July 24, 1967 (ch. 904, stats. 1967 the Second Validating Act of 1967), and was in the form and contained language similar to that used in the many curative or validating statutes passed by the California Legislature.[4]

---

[4]AB 44, sections 5 and 6 read: "Sec. 5. All acts and proceedings heretofore taken by or on behalf of any public body under any law, or under color of any law, for the authorization, issuance, sale, or exchange of bonds of any such public body for any public purpose are hereby confirmed, validated, and declared legally effective. This shall include all acts and proceedings of the governing board of such public body and of any person, public officer, board or agency heretofore done or taken upon the question of the authorization, issuance, sale, or exchange of such bonds.

"All bonds of any public body heretofore issued shall be, in the form and manner in which issued and delivered, the legal, valid and binding obligations of the public body. All such bonds heretofore authorized to be issued and hereafter issued and delivered in accordance with such authorization shall be the legal, valid and binding obligations of the public body. Whenever an election has heretofore been called for the purpose of submitting to the voters of any public body the question of issuing bonds for any public purpose, such bonds, if hereafter authorized by the required vote and in accordance with the proceedings heretofore taken, and issued and delivered in accordance with such authorization, shall be the legal, valid and binding obligations of the public body.

"Sec. 6(a) The foregoing provisions of this act shall operate to supply such legislative authorization as may be necessary to validate any such acts and proceeding heretofore taken which the Legislature could have supplied or provided for in the law under which such acts or proceedings were taken.

"(b) The foregoing provisions of this act shall be limited to the validation of acts and proceedings to the extent to which the same can be effectuated under the State and Federal Constitutions.

"(c) The foregoing provisions of this act shall not operate to confirm, validate, or legalize any act, proceeding, or other matter the legality of which is being contested or inquired into in any legal proceeding now pending and undetermined or which may be pending and undetermined during the period of 30 days from and after the effective date of this act, and shall not operate to confirm, validate, or legalize any act, proceeding, or other matter which has heretofore been determined in any legal proceeding to be illegal, void or ineffective.

"(d) This act shall not operate to confirm, validate, or legalize a contract between any district and the United States."

The courts have repeatedly held that the Legislature has the right by curative legislation to validate all defects in proceedings except those which have resulted in violations of constitutional rights. ■ "Under the holding in *Chase* v. *Trout* (1905) 146 Cal. 350 [80 P. 81], reiterated in many subsequent cases (see, e.g., *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 44 [37 Cal.Rptr. 74, 389 P.2d 538] . . .) a curative statute may validate all defects in proceedings except those which have resulted in violation of constitutional rights.

"The rule stated in *Chase* is: ' "If the thing wanting or omitted which constitutes the defect is something the necessity for which the legislature might have dispensed with by prior statutes, or if something has been done, or done in a particular way, which the legislature might have made immaterial, the omission or irregular act may be cured by a subsequent statute." . . .' " (*Hoffman* v. *City of Red Bluff*, 63 Cal.2d 584, 591-592 [47 Cal.Rptr. 553, 407 P.2d 857].) In *In re Redevelopment Plan for Bunker Hill*, 61 Cal.2d 21, it was stated at page 44 [37 Cal.Rptr. 74, 389 P.2d 538], also quoting from *Chase* " 'A curative statute or clause may preclude all investigation except "the single inquiry whether, in the case presented, the effect of applying the statute is to deprive the party of his property without the due process of law." ' " (See *People* ex rel. *Desert etc. Water Dist.* v. *Coachella etc. Water Dist.*, 232 Cal.App.2d 685, at p. 697 [43 Cal.Rptr. 18].)

■ Since it appears to be quite clear that the irregularities occurring after the election were mere irregularities of procedure which irregularities did not interfere with the calling of the election, the election, or the actual count of the votes therein, the issuance of the bonds by the defendant district was validated by chapter 904 of the statutes of 1967.

The trial court quite properly granted the motion for summary judgment. We find plaintiff's appeal to be frivolous and without any conceivable merit. The appeal is dismissed. All other pending applications and motions by both parties are denied.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied August 30, 1968, and appellant's petition for a hearing by the Supreme Court was denied October 9, 1968.