### The STATE of Ohio ex rel. BRADY

v.

### BLACKWELL, Secy. of State, et al.

[Cite as *State ex rel. Brady v. Blackwell,* 169 Ohio App.3d 301, 2006-Ohio-5615.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 88827.

Decided Oct. 20, 2006.

Michael J. O'Shea and Mark D. Griffin, for relator.

Langdon & Shafer, L.L.C., David Langdon, Joshua B. Bolinger, and Curt C. Hartman; James M. Petro, Attorney General, and Richard N. Coglianese and Sharon A. Jennings, Assistant Attorneys General, for respondent, Kenneth J. Blackwell.

Duvin, Cahn & Hutton and Robert M. Wolf, for respondents, Robert Bennett, Edward Coaxum, Sally Florkiewicz, Loree Soggs, members of Cuyahoga County Board of Elections, and the board of elections.

MARY EILEEN KILBANE, Judge.

{¶ 1} On October 5, 2006, relator, Jennifer Brady, commenced a mandamus action against Secretary of State J. Kenneth Blackwell, the Cuyahoga County Board of Elections, and the individual members of the board. In her petition, Brady asks this court to grant the writ and order respondents to place or keep her name on the November 7, 2006 general-election ballot. Thereafter, pursuant to this court's order, respondents filed a motion to dismiss, and relator filed the transcript from the board hearing. Relator also moved to amend her writ request to allege alternative relief in prohibition, and further filed an untimely response to respondents' motion to dismiss. On October 12, 2006, respondents filed a memorandum in response to the motion for leave to amend the complaint.

{¶ 2} The underlying facts of this matter are as follows: On May 2, 2006, Michael J. O'Shea filed as a write-in candidate for the Democratic primary for the office of state representative for the 16th Ohio House District. Having garnered

a sufficient number of write-in votes, O'Shea became the Democratic candidate for the district. Thereafter, O'Shea withdrew as the nominee, and on June 27, 2006, precinct committee members from the district conducted a meeting pursuant to R.C. 3513.31(D) and selected relator Jennifer Brady as O'Shea's replacement.

{¶ 3} On July 12, 2006, A. Steven Dever, the chairperson of the meeting, sent a letter to the Cuyahoga County Democratic Party chairman, Jimmy Dimora, that stated that he served as chairman of a special meeting called by the Cuyahoga Democratic Party where a majority of the central committee members for the district met for the purpose of selecting a replacement candidate for Micheal O'Shea. Dever's letter also stated that there was a quorum present from each of the cities in the district and for the district as a whole and that Jennifer Brady was nominated and unanimously chosen as the replacement candidate. Dever's letter, however, was not notarized. The letter also failed to include a notarized signature from the recording secretary from the meeting and a letter of acceptance from Jennifer Brady.

{¶ 4} Once Dimora received Dever's letter, he immediately forwarded it to the board on July 14, 2006, and recommended that Jennifer Brady be placed on the November ballot. Dimora's letter also requested that the board contact his office "if there [were] any additional steps necessary to finalize this change." Thereafter, on August 22, 2006, the board received a letter from Brady that included her acceptance as the Democratic candidate for the office of state representative for the district. Brady's letter also specifically requested that the board contact her if any additional information was needed.

{¶ 5} On August 23, 2006, the board received a second letter from Dimora and Karen Pianka, who was identified as the recording secretary for the Cuyahoga County Democratic Party. The letter contained the same language as Dimora's letter of July 14, 2006, but also included a copy of Dever's July 12, 2006 letter and a copy of Brady's letter of acceptance. Additionally, on the bottom of Dimora's letter, was a notarial stamp of Katrina Dillard, as well as her notarial seal. However, the letter did not contain a jurat. The second letter to the board again requested that the board notify the chairman if there were any additional steps needed to finalize this process. The board received three timely requests regarding instructions as to what was required for a replacement candidate, and all requests were unanswered. On August 7, 2006, the board accepted and certified Jennifer Brady as the Democratic candidate for the office of state representative for the 16th House District.

{¶ 6} On September 1, 2006, and then on September 6, 2006, the board received protests to Brady's candidacy. The challenges were that the letter from the district committee chairman was not certified and it did not include a signed

letter of acceptance from Brady. It should be noted that Jennifer Brady's signed letter of acceptance was received by the board within the necessary time required. Thereafter, on September 14, 2006, Dever signed an affidavit stating that he had sent a letter to Dimora dated July 12, 2006, that he had reviewed that letter, and that the contents of the letter were all true and accurate.

{¶ 7} On September 15, 2006, the board held a hearing to determine the protests. While no evidence was taken at the hearing, each side presented arguments. After arguments, and despite a written opinion by the board's legal counsel recommending that the protests be rejected, the board was deadlocked on the motion. Pursuant to R.C. 3501.11(X), the board properly forwarded the matter to the secretary of state to break the tie.

{¶ 8} On October 3, 2006, Assistant Secretary of State Monty Lobb broke the tie and voted with the board members in opposition against the motion to reject the protests against Brady's candidacy. For the following reason, we grant the relator's request for relief in prohibition.

{¶ 9} In order to be entitled to a writ of prohibition, Brady must establish that (1) the board of elections is about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582.

{¶ 10} Although the decision by the secretary of state is not subject to appeal, it, like a decision from the board of elections, is subject to review in extraordinary actions to determine whether the secretary of state engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions. *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 598 N.E.2d 1149; *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 5, 598 N.E.2d 1152.

{¶ 11} In this matter, the vote on the motion to reject the protest before the board resulted in a tie. According to R.C. 3501.11(X):

> In all cases of a tie vote or disagreement in the board, if no decision can be arrived at, the director or chairperson shall submit the matter in controversy, not later than fourteen days after the tie vote or disagreement, to the secretary of state, who shall summarily decide the question, and the secretary of state's decision shall be final.

{¶ 12} While the board did forward the matter to the secretary of state, an assistant secretary of state made the final decision to reject the motion. R.C. 111.04 allows for an assistant secretary of state to perform the duties of the secretary of state when the secretary of state is either absent or disabled.

However, the duties that an assistant secretary of state can exercise are only those duties that the secretary of state assigns him. Our review of the record indicates that the respondents have not submitted any evidence that substantiates that the secretary of state specifically delegated his duty under R.C. 3501.11(X). Therefore we are precluded from making a finding that this authority was properly delegated to Assistant Secretary of State Monty Lobb. See *State ex rel. The Limited, Inc. v. Franklin Cty. Bd. of Elections* (1993), 66 Ohio St.3d 524, 613 N.E.2d 634. Accordingly, the assistant secretary of state's decision to reject the motion in opposition to the protests was contrary to applicable statutes. We therefore find that Brady has demonstrated an abuse of discretion.

{¶ 13} Additionally, election laws are to be liberally construed so as to preserve, if possible, the voter's choice as expressed at an election. *McNamara v. Kinney* (1982), 70 Ohio St.2d 63, 67, 24 O.O.3d 118, 434 N.E.2d 1098. Even accepting a strict construction of election laws, our review of cases that have examined R.C. 3513.31 reflects that the statute has consistently been given a liberal interpretation. See *State ex rel. Barth v. Hamilton Cty. Bd. of Elections* (1992), 65 Ohio St.3d 219, 602 N.E.2d 1130; *State ex rel. Giuliani v. Cuyahoga Cty. Bd. of Elections* (1984), 14 Ohio St.3d 8, 14 OBR 314, 471 N.E.2d 148; *State ex rel. Flex v. Gwin* (1969), 20 Ohio St.2d 29, 49 O.O.2d 185, 252 N.E.2d 289; *State ex rel. Taylor v. Franklin Cty. Bd. of Elections* (1979), 66 Ohio App.2d 102, 20 O.O.3d 225, 421 N.E.2d 162. We also recognize that language within a statute may be found directory or permissive, as opposed to mandatory. See, e.g., *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531; *Miller v. Busick* (1897), 56 Ohio St. 437, 441–442, 47 N.E. 248; *Keenan v. Young* (1963), 119 Ohio App. 233, 235, 27 O.O.2d 102, 195 N.E.2d 382; *Brewer v. DeMaioribus* (1956), 102 Ohio App. 566, 570, 3 O.O.2d 96, 136 N.E.2d 772. Under the facts of this case, the failure to apply a liberal and reasonable application of the requirements under R.C. 3513.31(D) would contravene public policy, which favors free, competitive elections.

{¶ 14} It is undisputed that pursuant to R.C. 3513.31(D), the Cuyahoga County Democratic Party held a district committee meeting for the sole purpose of selecting a replacement for Michael O'Shea. It is undisputed that there was a necessary quorum and that the committee members unanimously selected Brady to run for the vacancy, which she accepted. It is undisputed that there was never any allegation of fraud, corruption, deception or any other illegality in either the selection process or in Brady's acceptance. It is undisputed that the committee chairperson immediately sent a letter to the Cuyahoga County Democratic chairman informing him of Brady's selection, and that the Democratic chairman immediately sent a letter to the board to inform it of the selection and requested that Brady be placed on the ballot. It is undisputed that the board accepted the letter from the Democratic chairman as proper notification pursuant to R.C.

3513.31(D), and on August 7, 2006, certified Brady's candidacy and the placement of her name on the ballot. It is undisputed that the board failed to respond to either Dimora's or Brady's letters requesting assistance regarding any additional steps, if necessary, to secure Brady's name on the ballot. It is also undisputed that the board received notice that Brady was selected to run for the district and of her acceptance of her nomination before 4:00 p.m. of the 76th day before the day of the general election. Finally, it is also undisputed that the board's own legal counsel issued an opinion recommending that the protest be rejected.

{¶ 15} Based upon the above, we cannot see how the right of the electors to vote for a nominee from their own party can be negated simply because of a timely filed correspondence that was later corrected, especially in the absence of any allegation of fraud, corruption, or illegality, and in light of the fact that the board certified Brady as a candidate before it ever received a corrected certification letter from the committee chairperson. There was never any allegation that Brady was not the person chosen to replace O'Shea, and there was never any allegation that Brady refused to accept the nomination. As this court stated in *Pintaric v. McHale* (1964), 5 Ohio App.2d 19, 23, 29 O.O.2d 260, 195 N.E.2d 606: "While all the provisions of the election laws are mandatory in the sense that they impose the duty of obedience upon those who came within their purview, nevertheless, irregularities not caused by fraud and which have not interfered with the full and fair expression of the voters' choice should not effect a disenfranchisement of the voters. Errors that are apparently made innocently and not in violation of substantial rights of electors are not grounds for invalidating an election. Mistakes or mere omissions on the part of election officers, or irregularities in directory matters * * * will not render an election invalid unless they affect the result of the election or render it uncertain."

{¶ 16} Accordingly, after taking into consideration the circumstances of this case, and applying a liberal construction of R.C. 3513.31(D), we hold that Brady was properly certified as a candidate. Accordingly, the writ of prohibition is granted; therefore, Jennifer Brady's name shall remain on the ballot.[1]

{¶ 17} It is further ordered that the clerk shall serve upon all parties notice of this judgment and date of entry pursuant to Civ.R. 58(B). Respondents to bear costs.

Writ granted.

GALLAGHER, P.J., concurs.

CALABRESE, J., concurs in judgment only.

---

1. Because we granted relator's request for relief in prohibition, we do not reach her claim for relief in mandamus, as it is moot.